[Civ. No. 20456.  First Dist., Div. Three.  Oct. 10, 1963.]

WARREN ELMO DAVIS, a Minor, etc., Plaintiff and Appellant, v. EVERETT NELSON, as Administrator, etc., et al., Defendants and Respondents.

Di Leonardo, Blake, Kelly, Aguilar & Leal and Stanley F. Leal for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, James B. Eggert and Edwin D. Jones, Jr., for Defendants and Respondents.

SALSMAN, J.—This is an appeal by the plaintiff from a judgment based upon a jury's verdict denying damages for personal injuries.

Appellant sustained injuries while riding in a car driven by Owen Nelson, who was killed in the accident. Appellant named as defendants the estate of the deceased driver, and the driver's parents. In his complaint appellant alleged he

was a guest in the car, and that his injuries were sustained because of the wilful misconduct and intoxication of the driver. Another cause of action based on appellant's alleged status as a passenger was also stated. Appellant's claims of prejudicial error before us relate solely to instructions given to the jury by the trial judge. In order to understand the basis for the court's instructions it is necessary to relate some of the evidence.

Appellant was a member of the United States Air Force, stationed at Madera. His home was in Campbell. He contacted his fiancee, Margaret Paul, at her home in Los Gatos and asked her to arrange transportation for him from Madera to Campbell. Margaret Paul asked Owen Nelson to drive her to Madera, and he agreed. During the evening of September 6, 1958, Margaret Paul, Owen Nelson and Henry Paul, the 14-year-old brother of Margaret Paul, left Los Gatos for Madera. They arrived at Madera, picked up appellant and began their return journey. Henry Paul, the only witness who could testify to the facts surrounding the trip, stated that Owen Nelson drove very fast on the trip to Madera. Margaret Paul asked that appellant drive on the return trip but Owen Nelson refused. Before leaving Madera the group jointly purchased two ''six packs'' of beer and drank together as they drove along. Owen Nelson, Margaret Paul and appellant each drank two cans of beer. Henry Paul was seated in the front seat with the driver. Appellant and Margaret Paul were in the back seat. After drinking two cans of beer each, appellant and Margaret Paul went to sleep. Owen Nelson continued to drink beer and drive at high speed, at times in excess of 70 miles per hour. A stop was made at Los Banos. From Los Banos the party proceeded toward Pacheco Pass. Appellant and Margaret Paul continued to sleep in the back seat. There was no letup in the high rate of speed at which Owen Nelson drove the car. When the car reached the top of Pacheco Pass the driver stopped and got out, but appellant and Margaret Paul continued to sleep. There is a considerable grade on the westerly side of Pacheco Pass, with many curves in the road. In descending the pass Owen Nelson continued to drive very fast. He told Henry Paul there was a certain club in Campbell to which he might be admitted if he took all the curves on the westerly side of Pacheco Pass at 70 miles per hour. His speed fully qualified him for membership in the club until the car skidded off the road and narrowly missed a telephone pole. The car came to a complete stop. All parties, including appellant, protested

against Owen Nelson's driving. Appellant told Nelson "in a high pitched voice" to slow down. This incident, and appellant's protest, occurred a mile and one-tenth from the intersection of Pacheco Pass Road and Frazer Lake Road. Appellant and Margaret Paul, according to the testimony, again went to sleep. In the mile and one-tenth distance from the place where the car first left the highway to the intersection of Frazer Lake Road the car twice reached a speed of 80 miles per hour. There is a curve in the road at the intersection mentioned, and there the car again skidded off the road, traveled 207 feet and struck a tree. Owen Nelson and Margaret Paul were killed. Appellant and Henry Paul were severely injured. Tests revealed the driver's blood alcohol level was .09 per cent. Expert testimony was that, depending upon individual tolerance to alcohol, one's driving ability becomes impaired when the blood alcohol level reaches .05 per cent to .1 per cent and that all persons are appreciably impaired in their ability to operate a motor vehicle when their blood alcohol level reaches .1 per cent.

▮ Appellant's objections on this appeal relate first to the court's instructions on contributory negligence as a defense to appellant's charge of wilful misconduct, and secondly to the court's instructions on the doctrine of assumption of risk. Respondents contend, with merit, that appellant cannot be heard to object to instructions given on either subject because appellant himself tendered instructions to the court on the very principles to which he now objects. (See *Pobor* v. *Western Pac. R.R. Co.*, 55 Cal.2d 314 [11 Cal.Rptr. 106, 359 P.2d 474] ; *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500].) The record fully supports the respondents in this regard, and we might properly dispose of this entire appeal on the familiar principle of invited error but we have chosen not to rest the decision in the case solely on such ground.

▮ On the subject of wilful misconduct and intoxication the trial judge instructed the jury in the language of standard BAJI instructions 209-C and 209-N. The last sentence of 209-C reads: "If plaintiff should prevail in your findings as to either the issue of intoxication or that of wilful misconduct as a proximate cause of injury suffered by him, he will be entitled to recover damages unless he is barred from relief by contributory negligence, if any, or by an assumption of the risk, if such there was, under instructions to be given by the Court." Instruction 209-N reads: "If you

should find that immediately preceding the accident involved in this case the defendant was intoxicated and that his intoxication was a proximate cause of injury to the plaintiff, the plaintiff will be entitled to your verdict for damages in compensation for the injury thus caused, provided, of course, that you should find in plaintiff's favor on the defense of contributory negligence and on the defense of assumption of risk under instructions to be given later.''

Appellant first correctly contends that these instructions inform the jury that contributory negligence is a defense to liability based upon wilful misconduct. He is not correct, however, in his contention that this is error. ■ Wilful misconduct has been defined as *the doing of an act with a positive, active and absolute disregard of the consequences.* (*Hawaiian Pineapple Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 656, 662 [255 P.2d 431].) ■ As a general rule, contributory negligence on the part of an injured plaintiff is no defense to an action based upon a claim of wilful misconduct. (*Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Donnelly* v. *Southern Pac. Co.,* 18 Cal.2d 863, 870 [118 P.2d 465]; Prosser, Torts (2d ed.) pp. 289-290.) The cases which uphold the general rule, however, are not cases involving claims of a guest against the driver of an automobile in which the guest is riding at the time of the injury. (See *Tognazzini* v. *Freeman,* 18 Cal.App. 468 [123 P. 540]; *Esrey* v. *Southern Pac. Co.,* 103 Cal. 541 [37 P. 500]; *Harrington* v. *Los Angeles Railway Co.,* 140 Cal. 514 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238]; *Donnelly* v. *Southern Pac. Co., supra; Moreno* v. *Los Angeles Transfer Co.,* 44 Cal.App. 551, 557 [186 P. 800]; *Richardson* v. *Pridmore,* 97 Cal.App.2d 124, 131 [217 P.2d 113, 17 A.L.R.2d 929]; *Cawog* v. *Rothbaum,* 165 Cal.App.2d 577 [331 P.2d 1063].) The statement of the court in *Tognazzini* v. *Freeman, supra,* at page 476, is typical of the comment made in the cases where the general rule is applicable: ''... the plaintiff's cause of action having been stated solely upon the wilful, wrongful act of the defendants, the doctrine of contributory negligence has no application to any phase of the case....'' Nevertheless, in cases arising out of automobile accidents, where the guest-host relationship is involved, a long line of cases has held that contributory negligence may be a defense to a charge of wilful misconduct on the part of the host, where the guest's conduct is such that it is a part of, or an inducing cause of the host's wilful misconduct. (See *Schneider* v.

*Brecht,* 6 Cal.App.2d 379 [44 P.2d 662] ; *Reposa* v. *Pearce,* 11 Cal.App.2d 517 [84 P.2d 475] ; *Amidon* v. *Hebert,* 93 Cal. App.2d 225 [208 P.2d 733] ; *Johnson* v. *Marquis,* 93 Cal. App.2d 341 [209 P.2d 63] ; *King* v. *City of Long Beach,* 67 Cal.App.2d 1 [153 P.2d 445] ; *Mountain* v. *Wheatley,* 106 Cal.App.2d 333 [234 P.2d 1031] ; *Bradbeer* v. *Scott,* 193 Cal. App.2d 575 [14 Cal.Rptr. 458].) ▮ Whether the conduct of the guest is a part of or an inducing cause of the wilful misconduct of the host is a question of fact, to be decided by the jury from all of the evidence in the case. ▮ The fact that the host is guilty of wilful misconduct is not of itself determinative of liability, because the question of the guest's fault, if any, still remains, and if on the evidence the jury finds the guest's conduct a part of or an inducing cause of the host's wilful misconduct, recovery may be denied. ▮ In the case we now consider, the driver's alleged wilful misconduct consisted of many things, each of which played its part in the final tragedy. There was first the drinking, in which all except Henry Paul participated. Twelve cans of beer were jointly purchased and six were consumed as the party drove along the highway. The jury could reasonably infer that all the beer was purchased for consumption on the trip to Campbell. It is true the evidence is that appellant went to sleep after he drank two cans of beer and so there is no direct testimony that he had knowledge the driver would continue to drink. But appellant did have knowledge that beer was in the car because he had participated in its purchase, and when he went to sleep he knew that not all of it had been consumed. There was next the extreme speed at which the host drove the car in which appellant was riding. The jury could reasonably infer that such speed, especially on curves, and which was not less than 70 miles per hour, was in part induced by the beer the driver had consumed and for which appellant had at least some responsibility. Finally, appellant's position of peril was vividly brought to his attention when the car first ran off the road just a mile and a tenth from the scene of the fatal accident. There appellant had an opportunity to observe his driver, for the car was stopped for a few moments. It is evident appellant was alarmed at that time for he warned Owen Nelson ''in a high pitched voice'' to slow down. Since appellant, according to the testimony, promptly went to sleep, it is argued that his conduct thereafter was in no way an inducing cause of his driver's wilful misconduct in negotiating the last mile before

the fatal crash at 80 miles per hour. Nevertheless the jury could readily infer that the beer the driver had previously consumed, and which appellant helped to furnish, had a continuing effect upon the driver, and was in part an inducing cause of the reckless, wanton and wilful manner in which he continued to drive the vehicle. Thus, on facts here present, it was entirely proper for the court to instruct the jury on contributory negligence. Moreover, appellant did not seek any refinement or elaboration of this instruction, but actually offered four instructions which refer to contributory negligence as a bar to recovery. These are plaintiff's proposed instructions Nos. 10, 25, 4 and 5, the last of which, No. 5, was given to the jury and which specifically applies the defenses of contributory negligence and assumption of risk to plaintiff's own theories of wilful misconduct and intoxication on the part of defendant, as well as to the passenger theory.

■ Appellant next contends it was error for the court to instruct the jury on the doctrine of assumption of risk. On this subject the court gave standard BAJI instructions Nos. 207, 207-A, B, C and D and 209-N, O, P and Q. In support of his charge of error, appellant argues that the defense of assumption of risk is not available when the defendant's wrong consists of a violation of duty expressly imposed by law for the protection of human life. (See *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 430, 431 [218 P.2d 17].) Here the duties imposed by law, and which appellant asserts were violated by the driver of the car were first, Vehicle Code section 22350 (the basic speed law), and second, Vehicle Code section 23102 (driving under the influence of intoxicating liquor). In support of his position appellant cites *Martin* v. *Stone*, 187 Cal.App.2d 726 [10 Cal.Rptr. 184]; *Maia* v. *Security Lumber & Concrete Co.*, 160 Cal.App.2d 16 [324 P.2d 657]; *Mula* v. *Meyer*, 132 Cal.App.2d 279 [282 P.2d 107]; *Bickham* v. *Southern Cal. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32]; *Friedman* v. *Pacific Outdoor Adv. Co.*, 74 Cal.App.2d 946 [170 P.2d 67], and *Martello* v. *Beletich*, 59 Cal.App. 533 [211 P. 20]. All of the cited cases are concerned with special relationships between the parties involved, or relate to duties imposed upon the respective defendants by some safety order of the State Division of Industrial Safety or by local ordinances relating to nuisances or the use of property. Those cases are not controlling here. Here the evidence is that appellant was asleep during most of the trip, and presumably unaware of the driver's violation of the

basic speed law. Nevertheless, immediately before the fatal crash he became aware of the manner in which the car was being driven when it left the road at high speed and narrowly missed a telephone pole. Appellant, and all other occupants of the car cautioned the driver to slow down, but nevertheless the car proceeded at great speed to the place of disaster. Although the violation of a statute was here involved, appellant, as a guest, could assume the risk of injury if he had actual knowledge of the violation of the statute and appreciated the danger, and voluntarily chose to continue the journey. Since the evidence disclosed appellant's knowledge and appreciation of the risk involved and further discloses his voluntary acceptance of the risk, the court's instructions on assumption of risk were entirely proper. In the recent case of *Rabago* v. *Meraz*, 60 Cal.2d 55, 62 [31 Cal.Rptr. 777, 383 P.2d 129], there was evidence from which it could have been inferred by the jury that the plaintiff had knowledge the driver of the vehicle in which she rode as a guest had been drinking and that she appreciated the risk involved. An instruction on assumption of risk was approved.

When the jury asked for instructions on what constitutes assumption of risk, appellant asked for and received BAJI 207 and 207-B. He did not ask for repetition of BAJI 209-Q, a more specific instruction on the subject and one which, on the whole, would have been more favorable to appellant's case.

■ Appellant's final contention is that the trial court's instructions served to mislead, misdirect and confuse the jury to his prejudice. We find no merit in this general charge of error. As we have earlier noted, the instructions given were appropriate to the issues and the evidence, and correctly expressed the law. Complaint is made that some of the instructions were not given in proper order or sequence, but there is no substance to this charge. Our review of the instructions given indicates the trial judge made a conscientious effort to fully instruct the jury on all legal principles involved in the case, and to arrange the instructions in logical order so that they might better be comprehended by the jury. The sequence in which the instructions are given to the jury rests in the sound discretion of the trial court. (*Smith* v. *Sugich Co.*, 179 Cal.App.2d 299 [3 Cal.Rptr. 718]; *Nungaray* v. *Pleasant Valley etc. Assn.*, 142 Cal.App.2d 653 [300 P.2d 285].) Finally, the trial judge carefully told the jury that the order in which the instructions were given was of no

significance as to their relative importance and that the jury should not single out any one instruction and ignore the others, but should consider all of the instructions as a whole. We conclude that the jury was fully and fairly instructed upon all theories of liability presented by appellant, as well as upon the various defenses raised by respondents, and that no error appears in the record.

The appeal from the order denying appellant's motion for a new trial is dismissed. Judgment affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied November 5, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 4, 1963.