[Civ. No. 452.   Fifth Dist.   July 22, 1965.]

CAROLYN CHAPPELL, Plaintiff and Appellant, v. CHARLES ALAN PALMER et al., Defendants and Respondents.

Paul S. Mosesian and James C. Janjigian for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best and Robert E. Coyle for Defendants and Respondents.

STONE, J.—This appeal is from a judgment entered on an order granting a nonsuit in an action brought by a passenger against a minor driver of an automobile and his parents. The action arose out of an intersection collision occurring October 17, 1959, at approximately 7 p.m., in Fresno County. Plaintiff guest and defendant driver in the front seat, and another couple in the back seat who are not parties to this action, were on their way from Corcoran to Coalinga to attend a football game.

Defendant was driving west on Jayne Avenue, a "fairly ordinary country road in pretty fair shape." The other vehicle was southbound on Lassen Avenue, which runs into Jayne Avenue then makes a short offset along Jayne and continues southerly. A cotton gin, gin yard, scale house and office, were located on the northeast corner of the intersection. At the time of the accident a number of cotton trailers, variously estimated from 25 to 100, were parked on the gin property. These and a large tree at the corner obstructed the view of each driver.

As defendant's car entered the intersection it was struck on the right by the other vehicle. Neither driver applied his brakes and neither driver saw the other because of obstructions at the intersection. Defendant, who had been traveling from 45 to 50 miles per hour, entered the intersection without reducing his speed, as neither he nor his passengers knew there was an intersection in the area. Although a diamond-shaped 18-inch by 18-inch warning sign was located on Jayne Avenue some 400 to 500 feet to the east, no one saw it. No

one, including plaintiff, complained of the manner of defendant's driving prior to the accident, and no one called defendant's attention to the cotton gin or the intersection.

The record indicates that both vehicles were in good mechanical condition. Although the lights of both cars were burning, defendant testified he could see only 50 to 100 feet ahead, and that visibility even with his lights on was not good, as it was dusk.

Plaintiff presents as her single ground of appeal that she made out a case for submission to the jury. The issue is whether plaintiff produced evidence from which an inference could be drawn that her injury proximately resulted from the wilful misconduct of defendant driver. (Veh. Code, § 17158.)

The Supreme Court, for the ostensible purpose of clarifying the distinction between gross negligence and wilful misconduct, stated, in *Meek* v. *Fowler,* 3 Cal.2d 420, at page 426 [45 P.2d 194] : " ' . . . Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' "

This definition has been stated in varying ways since *Meek* v. *Fowler,* but this gloss of the guest statute does not provide a standard or test by which the facts of a particular case can be measured to determine whether the conduct complained of comes within the definition. The basic difficulty is that *Meek* v. *Fowler* and its progeny define the state of mind of the actor, a subjective finding that can be seldom proved by direct evidence. ■ Therefore the element of intent in wilful misconduct cases is usually inferred from objective or external circumstantial evidence. Thus the question arises, what test should be applied to determine the sufficiency of circumstantial evidence of intent?

The cases say that "the existence of wilful misconduct is essentially a question of fact," which, more than anything else, tells us if there is any substantial evidence to support the jury's finding an appellate court will not overturn the verdict. It leaves unanswered the question of what constitutes substantial evidence in a wilful misconduct case. However, the term "substantial evidence" does provide an intimation of the standard appellate courts have applied, since substantial evidence has been defined as evidence which a fair and reasonable mind would accept as adequate to support a

conclusion. (*Gerhardt* v. *Fresno Medical Group,* 217 Cal. App.2d 353 [31 Cal.Rptr. 633]; *Houghton* v. *Loma Prieta Lbr. Co.,* 152 Cal. 574 [93 P. 377]; *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U.S. 197 [59 S.Ct. 206, 83 L.Ed. 126].) The substantial evidence rule indicates to us the pragmatic test that has evolved, *sub silentio,* in wilful misconduct cases is whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct.

Professor Prosser, in discussing factual proof of wilful misconduct, suggests that in practice a finding of wilful misconduct will be sustained ". . . in any case where it is clear from the facts that the defendant, whatever his state of mind, has proceeded in disregard of a high degree of danger, either known to him or apparent to a reasonable man in his position." (Prosser on Torts (3d ed.) § 34, p. 189.)

Recent Supreme Court cases, *Goncalves* v. *Los Banos Mining Co.,* 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833]; *Meyer* v. *Blackman,* 59 Cal.2d 668, 677 [31 Cal.Rptr. 3, 381 P.2d 916]; *Reuther* v. *Viall,* 62 Cal.2d 470, 475 [42 Cal. Rptr. 456, 398 P.2d 792], support the Prosser analysis and conclusion.

The "reasonable man" test is also suggested in the Restatement of Torts. Although the Restatement uses the word "reckless" rather than the term "wilful misconduct," the two are treated as synonymous. (See Special Note, § 500, p. 1293.) In comment c, section 500 of the Restatement of Torts, page 1295, it is said: "*Appreciation of extent and gravity of risk.* In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."

The criterion suggested by the Restatement of Torts and by Prosser on Torts, for determining the substantiality of evidence in wilful misconduct cases is, we believe, a practical supplement to the general definition of wilful misconduct found in the cases. It provides both the finder of fact and the reviewing court a workable standard for measuring external

evidence upon which the subjective test of wilful misconduct turns.

Looking now at the case at hand, defendant testified that he was familiar with the characteristics of gin yards, that he knew it was ginning season, and that when a gin is operating, vehicles, including trucks pulling cotton trailers, frequently enter and leave the yard. At the hearing of defendants' motion for nonsuit, the trial judge discounted this evidence, remarking: "There was a warning of an intersection and that is all that we have here, plus the gin and the trailers. There is no evidence that the place was lighted and was in operation at the time."

Plaintiff's attorney failed to call the court's attention to a provision in the pretrial order which reads: "MATTERS AGREED UPON OR ADMITTED—that a cotton gin stood then on the northeast corner of Lassen and Jayne Avenues, *being then in operation.*" (Italics added.)

Since this appeal is from a nonsuit, the evidence must be viewed in the light most favorable to plaintiff, every conflict in the testimony must be resolved in favor of plaintiff, every logical inference and presumption in support of plaintiff's case must be considered, and all evidence, both direct and indirect, which tends to sustain plaintiff's case must be accepted as true. (*Coates* v. *Chinn,* 51 Cal.2d 304, 306 [332 P.2d 289]; *Meyer* v. *Blackman, supra,* 59 Cal.2d 668, 671.) In light of the pretrial order we assume as a fact that the gin was operating at the time of the accident.

This assumption must be coupled with defendant's admission that (1) he was aware of the danger which attends a cotton gin in operation because the traffic is heavy and the vehicles are cumbersome; (2) his view was obstructed by a tree, the gin buildings, and a number of cotton trailers parked in the gin yard; (3) his lights were effective for only 50 to 100 feet because it was dusk; (4) he did not decrease his speed as he approached the area of the gin.

From these facts a jury might infer than an ordinary, reasonable man would realize that approaching an area of vehicular activity with obstructed visibility without slackening speed was highly dangerous. Under these circumstances it was error to take the case from the jury.

The judgment is reversed.

Conley, P. J., and Brown (R.M.), J., concurred.