[Civ. No. 11915. Third Dist. Feb. 19, 1969]

ROBERT R. MORRISON et al., Plaintiffs and Respondents, v. LYNDA MAY TOWNLEY et al., Defendants and Appellants.

Rust, Hoffman & Mills, Thomas A. Tweedy and Ellis J. Horvitz for Defendants and Appellants.

Edward P. Freidberg for Plaintiffs and Respondents.

REGAN, J.—In this personal injury action plaintiff Robert R. Morrison recovered judgment after a general jury verdict. Defendants appeal from the judgment, contending:

1. The evidence was insufficient as a matter of law to support a finding that defendant was guilty of willful misconduct, and the trial court erred in denying defendants' motion for nonsuit and in thereafter submitting this issue to the jury.

2. As a matter of law, plaintiff was a guest rather than a passenger within the meaning of the guest statute, and this issue should not have been presented to the jury.

The families of plaintiff Robert and defendant Lynda lived in Walnut Grove and were friends and neighbors. Plaintiff and his brothers are minors and frequently stayed in the house with defendant when she was uneasy about remaining alone.

On the day prior to the accident, Lynda arose at 6 to 6:30 a.m. and drove approximately 25 miles to the fairgrounds in Sacramento where she was working as a window trimmer. She worked until approximately 5 to 5:30 p.m. and returned to her home in Walnut Grove at approximately 6 p.m. Lynda invited the Morrison children to a movie in Sacramento and the children, Robert, age 13, James, age 16, Carl, age 10, and defendant's daughter Anna, age 2, accompanied her.

Lynda drove about 20 to 25 miles to West Sacramento to pick up her boyfriend, who then drove the car 5 to 7 miles to the movie in North Highlands. They stayed until the end of the movie and saw three feature pictures. Lynda's boyfriend then drove them back to his home in West Sacramento, where he was left off. The Morrison children fell asleep after the movies were over.

Lynda and the children proceeded home, with Lynda driving. The accident occurred at approximately 2 to 3 a.m. on Jefferson Boulevard, approximately 10 miles from West Capitol Avenue. At this point the highway is a straight, two-lane, paved road, having 15-foot traffic lanes and a 2-foot shoulder. Beyond the shoulder there is a 6-inch ditch. The investigating officer at the scene found approximately 105 feet of rolling tire track leading off the east shoulder into a slight ditch and then into a tree, where the vehicle came to rest. There was no indication that this tire track was interrupted by any action on the part of the driver in swerving the vehicle in either direction. The tire track was straight and slightly angled toward the tree. The area where the accident took place is relatively dark and there were no street signs or street lights. There was no indication that the vehicle had any mechanical defects or had suffered an impact with any other vehicle.

Plaintiff suffered personal injuries as a result of the collision. Although Lynda had been awake since 6 a.m. of the previous day, she testified that at the time she felt wide-awake and was not tired. She estimated her speed at 50 or 60 miles per hour.

Two theories of liability were presented at the trial. The first was that plaintiff was a passenger and should recover if Lynda was negligent in the operation of the vehicle. The second was that plaintiff was a guest and Lynda's conduct in her driving of the vehicle amounted to *willful misconduct*. Both issues were submitted to the jury.

Defendants first contend that the evidence was insufficient as a matter of law to support a finding of willful misconduct.

The "guest law"[1] takes away the right of action for injuries or death to a guest in a motor vehicle resulting from negligence of the driver, and permits recovery only where there is intoxication or willful misconduct. The primary policy underlying this statute is to prevent recovery for ordinary negligence by a guest who has accepted the hospitality of the owner. A secondary policy is to prevent collusive suits between friends where the driver admits negligence in order to shift the burden to his insurance carrier. (*Stephan* v. *Proctor* (1965) 235 Cal.App.2d 228, 230 [45 Cal.Rptr. 124].)

"Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guest probably will result or with a wanton and reckless disregard of the possible results . . . ." (*Reuther* v. *Viall* (1965) 62 Cal.2d 470, 475 [42 Cal.Rptr. 456, 398 P.2d 792].)

An intent to injure is not a necessary ingredient within the guest statute. (*Williams* v. *Carr* (1968) 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505] ; *Reuther* v. *Viall, supra,* 62 Cal.2d at p. 475.) As stated in *Williams* (at p. 584) : "[W]illful misconduct implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences."

Two recent appellate court decisions further analyze the concept. In *Pelletti* v. *Membrila* (1965) 234 Cal.App.2d 606, 611 [44 Cal.Rptr. 588], the court states: "[W]hen conduct

---

[1] Vehicle Code section 17158 reads: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

falls sufficiently below the acceptable norm to become grossly deficient, we characterize it as imbued with a bad intent which we call wilful misconduct. We attribute a malicious state of mind to the actor irrespective of any actual specific intent.'' In *Chappell* v. *Palmer* (1965) 236 Cal.App.2d 34, 37 [45 Cal. Rptr. 686], the court concludes that a pragmatic test has evolved: ''. . . whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct.''

The existence of willful misconduct is essentially a question of fact, and the driver's entire course of conduct is to be considered. (*Reuther* v. *Viall, supra,* 62 Cal.2d at p. 475.) The element of intent is usually inferred from objective or external circumstantial evidence. (*Chappell* v. *Palmer, supra,* 236 Cal.App.2d at p. 36.) ''Since the driver will rarely, if ever, admit to having driven with the frame of mind which would render his behavior culpable under the guest statute, the intentional, wanton character of his behavior may be implied from the surrounding circumstances.'' (*Hoffman* v. *Slocum* (1963) 219 Cal.App.2d 100, 102-103 [32 Cal.Rptr. 635].) If there is any substantial evidence to support the jury's finding, an appellate court will not overturn the verdict. (*Chappel* v. *Palmer, supra,* 236 Cal.App.2d at p. 36.) And the guest statute must be strictly construed, since it lessens the common law right of redress for injuries wrongfully inflicted. (*Williams* v. *Carr, supra,* 68 Cal.2d at p. 587.)

The evidence supports an inference that the accident occurred because Lynda fell asleep at the wheel. Defendants contend, however, that in the absence of *prior* drowsiness or dozing at the wheel the evidence is insufficient as a matter of law to require a finding of willful misconduct.

The latest expression of the Supreme Court on this issue is *Williams* v. *Carr, supra* (cited by both parties as support for their position). In *Williams* the court states (at p. 588) : ''It has been held that where a driver momentarily dozes off at the wheel of his car and after awakening continues to drive and an accident results from his falling asleep again, it is a question of fact for the jury as to whether the driver was guilty of willful misconduct in continuing to drive. (*Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 136-137 [299 P.2d 668] ; *Halstead* v. *Paul,* 129 Cal.App.2d 339, 340-341 [277 P.2d 42] ; *Pennix* v. *Winton, supra,* 61 Cal.App.2d 761, 764-765 [143 P.2d 940, 145 P.2d 561] ; *Erickson* v. *Vogt,* 27 Cal.App.2d 77, 80-82 [80 P.2d 533].) ''

In *Fiske* v. *Wilkie* (1945) 67 Cal.App.2d 440 [154 P.2d 725], the court, in an action for the death of a guest in an automobile, held that the evidence did not support a finding of willful misconduct where it showed that the vehicle, for no apparent reason, left a paved, straight, level highway at night and crashed into a tree on the driver's left, the court stating (at p. 451) : "In the instant case we fail to find any evidence that the erratic course taken by defendant's automobile when it left the highway and crashed into a tree was the result of any intentional act or omission on her part. She seems to have been just as completely surprised as were her guests, and no better able to explain the cause of the accident. It might be inferred from the evidence that defendant driver fell asleep or otherwise became unconscious or inattentive, which might have been negligence on her part." However, there was no evidence of lack of sleep, if any, on the part of the driver.

The rule has been stated thusly: "While a host who is involuntarily overcome by sleep is not guilty of gross negligence or willful misconduct or reckless operation of the automobile, a motorist who should realize that he is falling asleep, or may very likely be unable to stay awake, and yet continues at the wheel, may be found to be grossly negligent, guilty of reckless operation, or of willful or wanton misconduct." (5 Blashfield, Automobile Law and Practice (3d ed.) § 213.48, pp. 243-244.) This appears to be the rule in California. In *Cooper* v. *Kellogg* (1935) 2 Cal.2d 504, 510 [42 P.2d 59], the court states: "Where more than ordinary negligence is required for recovery, the particular question becomes, whether, in the light of the surrounding circumstances, there was a sufficient likelihood, of which the defendant knew or should have known, that sleep would overtake him while operating the car to render him guilty of the degree of culpability necessary for recovery. [Citations.]"

But was the evidence here insufficient as a matter of law to show willful misconduct and thus error in submitting the issue to the jury? In *Cooper, supra,* the court further states (at pp. 509-510) : "In *Stotts* v. *Blickle, supra* [220 Cal. 225 (30 P.2d 392) (1934)], falling asleep at the wheel was held to constitute gross negligence[2] and warrant recovery by a guest. There, however, as has been pointed out, the defendant knew he was drowsy from lack of sleep the night before.

---

[2]The statute formerly used the terms "intoxication, wilful misconduct, or gross negligence." (Stats. 1929, ch. 787, p. 1580; see 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 353, p. 1555.)

There was also the additional factor that the car was, to defendant's knowledge, not steering properly and he failed to have it repaired. Hence this case is not authority for the proposition that falling asleep while operating a car is, in itself, gross negligence. In fact, the numerous cases examined in which the courts of other jurisdictions have considered this question are almost unanimously to the effect that the fact of falling asleep while driving is sufficient to establish a *prima facie* case of ordinary negligence only, whereupon it becomes incumbent upon the defendant to offer proof of circumstances in excuse or justification of his conduct, and that the question of existence of that degree of negligence or misconduct which is necessary for a recovery under the particular 'guest law' under consideration is a question of fact for the jury or trial judge, to be determined in the light of the evidence and the inferences which may reasonably be drawn therefrom. . . .

". . . . . . . . . . . . . .

". . . Whether there has been such a lack of care as to constitute gross negligence is a question of fact for the determination of the trial court or jury, and this is so 'even where there is no conflict in the evidence if different conclusions upon the subject can be rationally drawn therefrom.' (*Malone* v. *Clemow, supra* [111 Cal.App. 13 (295 P. 70) (1931)].)
. . . Kellogg testified that he did not feel sleepy but appellant insists that one cannot fall asleep without experiencing the ordinary feelings and symptoms of oncoming sleep. This question also falls within the province of the trier of the fact. In *Bushnell* v. *Bushnell, supra,* [103 Conn. 583, 131 A. 432 , 44 A.L.R. 785], upon which the appellant places great reliance, the Connecticut court said: 'it then becomes a question of fact whether or not the driver was negligent; and, in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach'."

And as stated in *Krause* v. *Rarity* (1930) 210 Cal. 644, 655 [293 P. 62, 77 A.L.R. 1327] : "Where liability attaches only for gross negligence it is for the jury, under proper instructions by the court, to pass upon the question whether such negligence exists." (See also *Malone* v. *Clemow* (1931) 111 Cal.App. 13, 18 [295 P. 70].)

The same rules apply to willful misconduct as to gross negligence, i.e., the issue is primarily one of fact for determination by the trier thereof. (*Ruether* v. *Viall, supra,* 62 Cal.2d at p. 475; *Chappell* v. *Palmer, supra,* 236 Cal.App.2d at p. 36;

*Halstead* v. *Paul* (1954) 129 Cal.App.2d 339, 341 [277 P.2d 42] ; 5 Blashfield, *op. cit.* § 213.48, p. 244.)

 Under the facts of this case the trial court did not err in submitting the issue of misconduct to the jury. The facts show that Lynda had been awake approximately 21 or 22 hours prior to the accident without sleep or rest. She had put in a regular workday before deciding to go to the movie. In addition, she had done considerable driving and had also elected to drive four minor children on a hazardous trip. The car left 105 feet of straight tire marks on the shoulder of the road, going at a slight angle. Thus it could be inferred that the vehicle traveled a good number of feet on the highway and at this angle prior to going on the shoulder. However, no corrective action was taken. From these facts, a jury could reasonably find that Lynda was guilty of willful misconduct since she was exhausted and fell asleep under circumstances where she should have realized that she was tired.

The jury could reasonably infer from the character of the accident not only that it had resulted from Lynda's falling asleep at the wheel, but that she had been ''fighting'' sleep before she lost consciousness. The jury could find in accordance with this inference, even though the defendant herself had testified to the contrary. (*Huddy* v. *Chronicle Publishing Co.,* 15 Cal.2d 554 [103 P.2d 421] ; cf. *Pennix* v. *Winton* (1943) 61 Cal.App.2d 761, 764-765 [143 P.2d 940, 145 P.2d 561].) Though Lynda testified that she was not tired or sleepy, a reasonable inference drawn from circumstantial evidence may be believed as against direct evidence to the contrary. (*Halstead* v. *Paul, supra,* 129 Cal.App.2d at p. 341.) There was no error in submitting the issue to the jury.

 Since we have determined the foregoing issue on willful misconduct was properly submitted to the jury, we deem it unnecessary to dwell at any length on the issue of the status of plaintiff either as a passenger or as a guest. Suffice it to say that in our view there was sufficient evidence to submit the issue to the jury upon proper instructions as was done here. In this regard we may assume that the jury understood the instructions and correctly applied them to the evidence on both theories. (See *Gillespie* v. *Rawlings,* 49 Cal.2d 359, 369 [317 P.2d 601].)

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 17, 1969.