[Civ. No. 25252.  First Dist., Div. Four.  Feb. 6, 1970.]

HORST W. DZIURA, Plaintiff and Appellant, v.
CALIFORNIA AVIATION SERVICE, INC., et al.,
Defendants and Respondents.

## COUNSEL

Morgan & Moscone and Charles O. Morgan, Jr., for Plaintiff and Appellant.

Ericksen, Ericksen, Kincaid & Bridgman, Preston N. Ericksen and Richard G. Logan for Defendants and Respondents.

## OPINION

**DEVINE, P. J.**—Plaintiff, a 23-year-old student at defendant corporation's school of aviation, was severely injured when he was struck by a propeller. His complaint charges defendants with negligence and, in a second count, with wanton and reckless conduct in that the school, by its pilot instructor, directed plaintiff to remove obstructions on the ground in the path of an airplane while the propeller was moving. Defendants generally denied the charging allegations and set up the defenses of contributory negligence and assumption of risk as to both causes. A jury found for defendants by general verdict, the vote being nine to three.

The accident happened when appellant and the instructor, Rudolph, had landed at the end of a lesson at Oakland Airport. It was then dark. Plaintiff

had experienced 30 hours and 15 minutes of actual flying instruction, but he had never piloted a plane after sundown. He taxied the plane towards its parking site. On the taxiway there were chocks (wheel blocks) scattered in the plane's path. Rudolph admitted that he knew that a chock was right in front of the plane's left wheel. In fact, the plane had run into this chock. Nevertheless, Rudolph directed plaintiff to remove the chocks, according to plaintiff's testimony, and Rudolph, who had taken over the controls, left the propeller running, although he could have stopped it simply by turning a switch or by changing the mixture control. The latter method would have prevented an accidental restarting if a stopped propeller were brushed against.

Rudolph somewhat weakly denied that he had directed plaintiff's action, saying the act was "mutually agreed," but later in his testimony, he admitted that when he said "we agreed" he meant that he told plaintiff to go and plaintiff said he would.

Plaintiff left the plane, walked towards its front, removed the chock near the wheel, reached for another chock near the nose of the plane, misjudged the distance and was struck by the propeller. Rudolph testified that he had expected that plaintiff would go out to the end of the struts, and that he had been instructed at an earlier time to do so. He expected, however, that plaintiff, after going to the point where the strut meets the wing, would go forward to the front of the aircraft to move the chocks.

There were bright lights on the hangar, which may have interfered with plaintiff's ability to judge the position of the revolving propeller. This was a disputed subject. The first man on the scene after the accident testified that Rudolph said to him, while still on the scene, that the lights were too bright. (This prompted the witness, a crew chief at the airport, to inquire of Rudolph why he had not turned off the engine, a question which cannot but remain throughout the case.) Rudolph had been blinded by the same lights on an earlier occasion. He admitted at the trial that if someone asked him after the accident if it was hard to see because of the lights, he "could have said something of this nature," but he wasn't thinking of it at the moment.

The president of respondent company had testified on deposition that if a chock was in front of a propeller, the propeller should be shut down; but at trial he explained that he had probably instructed pilots to stop the propeller and get any chock out of the way because a chock could damage the propeller. Apparently, no rule for the protection of students was made, the matter being left to the instructors.

Rudolph conceded that he was in command, that plaintiff had a lot of

confidence in him, that plaintiff was nervous, and that plaintiff was eager to comply with any request or instruction which Rudolph gave him; and although various qualifications were made on redirect examination, Rudolph did flatly concede on cross-examination that it was not only not part of plaintiff's training to have him go out because of the lights when a propeller was running, but that as a matter of fact it was a dangerous thing to do.

Other statements of fact are given under discussion of separate points of law.

### The Negligence Cause

Appellant makes three points in respect of his cause based on respondents' alleged negligence. We deem them to be of less importance than is the subject of wilful misconduct because it seems as likely that the jury found the instructor to be negligent, and plaintiff to be contributorily negligent. A statement of these points and of our dispositions is given, therefore, briefly.

*Point One*: That the pilot had the last clear chance of avoiding an accident, but the court refused plaintiff's proposed instructions on that subject.

*Disposition*: The evidence is that the accident happened so soon after the descent by plaintiff from the plane that the pilot did not have a last clear chance.

*Point Two*: That there should have been a directed verdict.

*Disposition*: The court could not have taken away from the jury the issue of contributory negligence, even if the negligence were conclusively proved.

*Point Three*: That the court should have instructed the jury that a flight school is a common carrier and that it must use the utmost care for the safe carriage of the persons whom it carries for reward.

*Disposition*: The evidence does not show as a matter of law that California Aviation Service was undertaking to carry "for all persons indifferently" (the test of the common carrier [*Smith* v. *O'Donnell,* 215 Cal. 714, 718 (12 P.2d 933)], particularly in respect of student aviators), but the proffered instruction would have left no discretion to the jury as to the facts, and therefore it was not a valid instruction. (*Brignoli* v. *Seaboard Transp. Co.,* 29 Cal.2d 782, 791, 792 [178 P.2d 445]; see *Arrow Aviation, Inc.* v. *Moore,* 266 F.2d 488 [73 A.L.R.2d 337], in which the trial judge submitted to the jury the question of the nature of the defendant's air taxi service.) Contributory negligence is a defense available to a common carrier, even in an

action by a passenger. (9 Cal.Jur.2d, Carriers, § 64, p. 759.) It seems, therefore, that the more important issue is that of wilful misconduct.

### Wilful Misconduct

The court instructed the jury on the elements of wilful misconduct. Appellant offered, and was refused, instructions which stated in effect that contributory negligence is not a defense when the defendants' conduct constituted wilful misconduct. ██ The court instructed the jury that: "Contributory negligence is a defense to a charge of wanton and reckless misconduct, where the plaintiff's conduct is such that it is a part of defendant's wanton and reckless or willful misconduct." At the time of the trial, in May 1967, there were expressions by some decisions of the Court of Appeal which applied the rule stated in the quoted instruction to automobile guest cases, and probably it seemed reasonable to the trial judge to apply the rule of the automobile cases to one involving an airplane. But in *Williams* v. *Carr,* 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505], the Supreme Court disapproved the broad language of those appellate court cases (at p. 588). ██ To constitute a defense to wilful misconduct, the action of the plaintiff must be as reprehensible as that of defendant, i.e., conduct which shows a wilful or reckless disregard of his own safety (*id.,* at p. 588).

Because the jury was incorrectly instructed, as the Supreme Court's later decision in the *Williams* case makes plain, respondents have been compelled to show why the judgment should not be reversed, and they have responded by advancing two propositions: 1) that no instruction on wilful misconduct should have been given, because there was no evidence sufficient to support the charge; and 2) in any event, the instruction on contributory negligence, if faulty, was not prejudicial.

██ We hold that it was proper to instruct on wilful misconduct. If a verdict had been rendered in favor of plaintiff, based upon an affirmative answer to a special interrogatory to the jury on the subject of wilful misconduct, or if plaintiff had proceeded on the wilful misconduct count only, we would have no hesitation in upholding a plaintiff's verdict. Therefore, the instruction on contributory negligence, as applied to wilful misconduct, was an important error.

Our reasons for holding that a verdict based upon wilful misconduct would have been sustained are these:

1. The disparate positions of the student and the instructor. The student had but 30 hours of flying time; the instructor, between 3,700 and 4,000 hours. Section 91.3 of the federal regulations on aircraft reads: "The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." (14 C.F.R. 91.3(a).) Rudolph

admitted not only that he was in command, but that he had charge of the controls at the time of and just prior to the accident. Rudolph admitted in his testimony that in the early stages of their training students are "generally on the nervous side" and that plaintiff himself was nervous; further, that plaintiff was eager to comply with any request or instructions given him by Rudolph and that he had a lot of confidence in Rudolph. It surely could be inferred by the finders of fact that there was a combination of the paramilitary sort of instructions which are necessary in aviation (the flight before the accident had' been one in which "stalls" had been practiced, and although the instructions during flight may have been more peremptory than those on the ground, they both partake of the same nature) and of the directions which plaintiff would be eager to comply with in deference to his instructor.

2. Going near a revolving propeller is extremely dangerous, and this appears in the testimony not only of Rudolph but also of the president of the school. This is an element to be considered in respect of wilful or wanton misconduct. (*Givens* v. *Southern Pac. Co.*, 194 Cal.App.2d 39, 44 [14 Cal.Rptr. 736]; Prosser, Law of Torts (3d ed.) § 34, pp. 188-189.) Of course, counsel for the defense argued to the jury and insisted before us that because of this great danger, Rudolph was entitled to believe that plaintiff would approach the spinning propeller cautiously, in a manner described below. But if instructions were given to plaintiff at earlier times, and the evidence on this subject is vague, no word of caution was spoken by the pilot when he directed plaintiff to remove the chocks. The pilot's direct instruction might well, in the opinion of the triers of fact, supersede in plaintiff's mind, as he quickly reacted to the order, prior instructions.

3. The simplicity of the act by which the propeller could be stopped is another factor.

4. The direction to plaintiff to go into what could obviously have appeared to be a position of danger seems to have been in accord with a settled practice of the aviation school, and in this case is much stronger than others in which a single fault has been held to constitute wilful misconduct: driver's reaching for a fallen cigarette lighter in a moving vehicle (*Reuther* v. *Viall,* 62 Cal.2d 470 [42 Cal.Rptr. 456, 398 P.2d 792]); failure of an employee of a wrecking yard to warn decedent adequately of the danger in going under an automobile or to order him from under it, this even though a certain amount of warning was given (*Levizon* v. *Harrison,* 198 Cal.App.2d 274 [18 Cal.Rptr. 284]). We say it seems to have been a settled practice because Rudolph himself testified that he expected his students, and on this occasion plaintiff, to go out to where the strut meets

the wing of the plane, and then to go forward around to the front of the aircraft.

The fact that it was settled practice also may be inferred from the instruction given to the pilots by the president of the school. This was that if a wheel chock was in front of a propeller, the propeller should be shut down. The president of the school testified that this regulation was to protect the propellers from damage. At least in a negative way, it seems there was no departure from the dangerous practice, therefore, so long as the propeller itself was not in danger. ■ Reliance on abnormally favorable results of previous highly dangerous conduct does not relieve the actor from a charge of wilful misconduct. (*Olea* v. *Southern Pac. Co.,* 272 Cal.App.2d 261, 266 [77 Cal.Rptr. 332]; Rest. 2d Torts, § 500, com. c, p. 589.)

■ 5. It is not necessary in order to constitute wanton or wilful misconduct that the actor realize the consequences of his action. The law arrives at an objective standard of conduct under which it is deduced in certain actions that the actor's intentions were wilful. (*Pelletti* v. *Membrila,* 234 Cal.App.2d 606, 610 [44 Cal.Rptr. 588]; *Chappell* v. *Palmer,* 236 Cal.App.2d 34, 37 [45 Cal.Rptr. 686]; *Williams* v. *Carr,* 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505].) ■ In our case, however, there actually are admissions on the part of the pilot, not that he appreciated the danger at the moment of his order, but, by inference at least, that had he turned his mind to it at all, he would have known of its folly. Not only does this appear from his testimony in general, but in particular as to the blinding condition of the lights. This was a hotly contested issue at the trial, whether the hangar lights were in such position as actually to blind plaintiff, who had not previously flown at night, as he approached the front of the plane; but we must remember throughout that plaintiff was held to an accounting for contributory negligence.

■ Plaintiff's testimony was that he simply misjudged the distance. This, of course, is not wilful misconduct on his part as a matter of law, nor even contributory negligence as a matter of law. (*M & M Livestock Transport Co.* v. *California Auto Transport Co.,* 43 Cal.2d 847, 850-852 [279 P.2d 13].) It could have been, and probably was, found to be contributory negligence as a fact, but this should not be deemed decisive on the count on wanton and wilful misconduct.

■ ■ To sum up, we find that the conduct complained of could reasonably be held by triers of fact to have been done either with knowledge that serious injury to plaintiff would probably result or with a wanton and

reckless disregard of the possible results. (*Goncalves* v. *Los Banos Min. Co.*, 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833].)

Respondents remind us that there are cases which contain language to the effect that instructions on wilful or wanton misconduct should rarely be given by the trial courts. (*Lovett* v. *Hitchcock,* 192 Cal.App.2d 806, 813 [14 Cal.Rptr. 117]; *Palazzi* v. *Air Cargo Terminals, Inc.,* 244 Cal.App.2d 190 [52 Cal.Rptr. 817].) It is not our present purpose to assess the validity of this language, the key word of which is the uncertain one, "rarely." ▮▮▮ The courts ought not to be reluctant to allow the cause of wilful misconduct to proceed to verdict in cases of grave fault of the defendant, wherein the positions of the respective parties are exceedingly unequal and the party who is charged has a marked advantage over the other, the reason being that the charge of wanton or wilful misconduct eliminates the defense of contributory negligence when its application would be overharsh. (See 2 Harper & James, Law of Torts, § 22.6, p. 1215; Prosser, Law of Torts (3d ed.) § 64, p. 436.) This is such a case. (Incidentally, it was argued to the jury by the defense that the doctrine of contributory negligence is an historical concept which has evolved through the ages. This is not correct. Contributory negligence is a relatively late doctrine. [2 Harper & James, Law of Torts, § 22.1, pp. 1194-1195; Malone, *The Formative Era of Contributory Negligence,* 41 Ill. L. Rev. 151.] Although it is firmly established, it is not an absolute. There are exceptions and limitations to its application.)

### The Question of Prejudice

▮▮▮ The court having instructed the jury erroneously because of the case law as it existed before *Williams* v. *Carr,* 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505], the question arises whether the error was prejudicial. We hold that it was.

Defense counsel throughout his argument informed the jurors that contributory negligence was a defense to wilful misconduct as well as to the ordinary charge of negligence. He cautioned them that they must not compare negligence, and he received an instruction to that effect. It is true that there were words relating to contributory negligence "before leaving the plane," as distinguished from such negligence a few moments later, on the theory that was disapproved in *Williams* v. *Carr.* The distinction, however, besides being invalid, as held in the *Williams* case, would hardly be appreciated by the jury.

Finally, it is argued by respondents that when the jury came in for further instructions after a long debate, they asked for instructions on negligence and assumption of risk only, and not on contributory negligence; wherefore, contributory negligence was not the deciding factor. But it seems likely from

the emphasis placed on the subject in the arguments, that contributory negligence was indeed the element which brought about the defense verdict.

Indeed, a thoughtful juror might well wonder why plaintiff had undertaken the heavier burden of proving wilful misconduct over and above negligence if contributory negligence were a bar to both, and would give but small consideration to the wilful misconduct theory. ██ Little is said in the briefs on the subject of assumption of risk, but we think it well to point out for use at another trial that in order to assume a risk, the plaintiff must have a full appreciation of the particular danger, that is to say, it is not enough in this case that plaintiff knew in a general way that it is dangerous to get close to a revolving propeller (this was the basis of the defense of assumption of risk at the trial). It must also be shown by a preponderance of evidence that as he went forward in the very moments prior to the accident, he knew of the chance that he would misjudge the distance. (See *Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266 [32 Cal. Rptr. 193, 383 P.2d 777].) The requirement of actual appreciation of a known danger, therefore, is greater as applied to a plaintiff where the defense of assumption of risk is raised than it is for the defendant in a case where wanton or wilful misconduct is a proper issue. In this case, the difference simply results from the superior position of the pilot and of the president of the school.

### Other Matters

██ The instruction that where one looks and does not see, or listens and does not hear, either has given untrue evidence or has been negligently inattentive, has been withdrawn from the Book of Approved Jury Instructions and will not be given again. Also, an instruction requiring extreme caution of plaintiff in approaching a moving propeller is in argumentative form and will not be repeated.

The notice of appeal includes appeal from the order denying motion for judgment notwithstanding the verdict, but appellant has made no mention of this in his brief. The appeal from the order is deemed abandoned.

The judgment is reversed.

Rattigan, J., concurred.

**CHRISTIAN, J.**—I dissent.

It is true that the instruction on willful misconduct delivered by the court was defective in failing to state that contributory negligence is not generally a defense to a claim based upon willful misconduct. (*Williams* v. *Carr* (1968) 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505].) But in my view

the failure correctly to explain the effect of willful misconduct was not prejudicial where the evidence would not have supported a verdict on that theory. Wanton or willful misconduct "implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences." (*Williams* v. *Carr, supra,* at p. 584.) It has also been defined as "the doing of an act with a positive, active and absolute disregard of the consequences." (*Davis* v. *Nelson* (1963) 221 Cal.App.2d 62, 66 [34 Cal.Rptr. 201].) Such misconduct is a very serious breach of normal patterns of behavior: it has been said that "cases warranting instruction on willful or wanton misconduct will seldom arise. By its very definition, such misconduct is rare. . . . It should but rarely be resorted to by the trial courts." (*Lovett* v. *Hitchcock* (1961) 192 Cal.App.2d 806, 813 [14 Cal.Rptr. 117]; also see *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190 [52 Cal.Rptr. 817].)

In the present case the evidence shows that respondent Rudolph allowed or directed appellant to step out of the plane some 6 feet from the revolving propeller and that Rudolph knew that appellant would attempt to remove chocks from an area somewhere in front of the plane. While such conduct on the part of respondents could well have been considered negligent, the evidence also shows that appellant had been instructed regarding the danger inherent in a revolving propeller and that Rudolph expected appellant would remember such instruction and avoid the propeller. There is no evidence that Rudolph should have known that it was "highly probable" that appellant would be struck by the propeller. In short, there was insufficient evidence to support any instructions on willful, wanton or reckless misconduct, and respondents were entitled to a directed verdict on this count of the complaint. Therefore the failure to give correct instructions on willful misconduct could not have been prejudicial to appellant.

None of the other errors complained of by appellant requires reversal.

I would affirm the judgment.

A petition for a rehearing was denied February 26, 1970, and respondents' petition for a hearing by the Supreme Court was denied April 1, 1970. McComb, J., was of the opinion that the petition should be granted.