[S. F. No. 16608. In Bank.—Nov. 1, 1941.]

JOELENE DONNELLY, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

Elliott Johnson for Appellant.

Hildebrand & Bills and James R. Agee for Respondent.

TRAYNOR, J.—Plaintiff, the wife of an employee of the Southern Pacific Railroad, was traveling on a free pass from El Paso, Texas, to Sacramento, California, aboard a Southern Pacific train when it collided with an eastbound train standing upon a siding in California. Plaintiff brought this action against the railroad to recover damages for personal injuries suffered in the collision. The complaint alleges, and the answer admits, that before the collision one of defendant's employees, in the course of his employment, set improperly the switch that controlled the siding, causing the westbound

train to turn into the siding and collide with the eastbound train. No evidence was introduced on the question of negligence. The court instructed the jury that the plaintiff was entitled to recover from the defendant only if the switchman was grossly negligent in setting the switch. It defined gross negligence as "that entire want of care which would raise a presumption of conscious indifference to consequences; an entire want of care, or such a slight degree of care as to justify the belief that there was an entire disregard for and indifference to the safety and welfare of others." The jury returned a verdict in favor of the plaintiff, and defendant has appealed from the judgment.

The free pass on which plaintiff was traveling contained the following condition: "The person accepting and using this pass, in consideration of using the same, agrees that the Southern Pacific Company shall not be liable under any circumstances for any injury to the person, or for any loss or damage to the property of the individual using the pass; and that as to such person the Company shall not be considered as a common carrier or liable as such." Plaintiff contends that this provision releases the defendant from liability for ordinary negligence, but not gross negligence, and that the jury was justified in finding the switchman guilty of gross negligence. Defendant asserts that the provision is a release from liability for any sort of negligence, ordinary or gross; that the provision is inapplicable only in the case of wilful or wanton misconduct, and that there is no evidence to justify a finding that the switchman was guilty of wilful or wanton misconduct.

California by statute has provided that "a common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud or willful wrong of himself or his servants." (Civil Code, sec. 2175.) This court has held that the improper setting of an open switch may constitute gross negligence rendering the railroad liable to a passenger traveling on a free pass who is injured in the resulting accident. (*Walther* v. *Southern Pacific Co.*, 159 Cal. 769 [116 Pac. 51, 37 L. R. A. (N. S.) 235].)

Plaintiff, however, was traveling in interstate commerce. The question presented therefore is whether the California statute and decision can validly apply to rail-

roads engaged in interstate commerce. In the absence of contrary congressional legislation a state may by statute or judicial decision establish rules affecting interstate commerce so long as such commerce is not unduly burdened. (*Port Richmond etc. Ferry Co.* v. *Freeholders of Hudson County,* 234 U. S. 317 [34 Sup. Ct. 821, 58 L. Ed. 1330]; *Geer* v. *Connecticut,* 161 U. S. 519 [16 Sup. Ct. 600, 40 L. Ed. 793]; *Plumley* v. *Massachusetts,* 155 U. S. 461 [15 Sup. Ct. 154, 39 L. Ed. 223]; *Cooley* v. *Board of Port Wardens,* 12 How. 299 [13 L. Ed. 996]; *Chicago, R. I. & P. Ry. Co.* v. *Maucher,* 248 U. S. 359 [39 Sup. Ct. 108, 63 L. Ed. 294]; *Chicago M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133 [18 Sup. Ct. 289, 42 L. Ed. 688]; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477 [24 Sup. Ct. 132, 48 L. Ed. 268].) If a statute is enacted by Congress covering the subject of the state's regulation, it supersedes the state statute or decision. (*Southern Ry. Co.* v. *Railroad Commission of Indiana,* 236 U. S. 439 [35 Sup. Ct. 304, 59 L. Ed. 661]; *Southern Express Co.* v. *Byers,* 240 U. S. 612 [36 Sup. Ct. 410, 60 L. Ed. 825]; *Adams Express Co.* v. *Croninger,* 226 U. S. 491 [33 Sup. Ct. 148, 57 L. Ed. 314]; *Western Union Tel. Co.* v. *Speight,* 254 U. S. 17 [41 Sup. Ct. 11, 65 L. Ed. 104]. See *Western Union Tel. Co.* v. *Commercial Milling Co.,* 218 U. S. 406 [31 Sup. Ct. 59, 54 L. Ed. 1088]. See 30 Ill. L. Rev. 373; 41 Harv. L. Rev. 200.)

If, however, Congress enacts a statute that embraces the general field but does not cover the matter on which the state has ruled, the state statute or decision is superseded only if Congress intended by such legislation to occupy the entire field, thereby excluding all state control. (*Atchison, T. & S. F. Ry. Co.* v. *Railroad Com. of Cal.,* 283 U. S. 380 [51 Sup. Ct. 553, 75 L. Ed. 1128]; *Kelly* v. *Washington,* 302 U. S. 1 [58 Sup. Ct. 87, 82 L. Ed. 3]; *H. P. Welch Co.* v. *New Hampshire,* 306 U. S. 79 [59 Sup. Ct. 438, 83 L. Ed. 500]; *Kansas City So. Ry. Co.* v. *Van Zant,* 260 U. S. 459 [43 Sup. Ct. 176, 67 L. Ed. 348]; *Southern Express Co.* v. *Byers, supra; Adams Express Co.* v. *Croninger, supra; Western Union Tel. Co.* v. *Speight, supra; Postal Tel.-Cable Co.* v. *Warren-Godwin Lumber Co.,* 251 U. S. 27 [40 Sup. Ct. 69, 64 L. Ed. 118]; see *Chicago M. & St. P. Ry. Co.* v. *Solan, supra; Chicago R. I. & P. Ry. Co.* v. *Maucher, supra; Pennsylvania R. R. Co.* v. *Hughes, supra.*) The state courts are then bound by federal decisional law in the field. (*Kansas*

*City So. Ry. Co.* v. *Van Zant, supra; Southern Express Co.* v. *Byers, supra; Adams Express Co.* v. *Croninger, supra; Western Union Tel. Co.* v. *Speight, supra.*)

■ In 1906 Congress passed the Hepburn Act (34 U. S. Stats. at Large, 544 [49 U. S. C. A., § 1]) regulating the issuance of free passes by interstate carriers. The act deals only with the classes of persons to whom free passes may be issued and contains nothing about the liability of carriers to such passengers, nor the terms of the passes. ■ Generally an act of Congress is not regarded as superseding a state statute or decision unless the two conflict or the state law stands in the way of congressional objectives. (*H. P. Welch Co.* v. *New Hampshire, supra; Kelly* v. *Washington, supra; Atchison, T. & S. F. Ry.* v. *Railroad Com. of Cal., supra; Maurer* v. *Hamilton,* 309 U. S. 598 [60 Sup. Ct. 726, 84 L. Ed. 969] ; *Palmer* v. *Massachusetts,* 308 U. S. 79 [60 Sup. Ct. 34, 84 L. Ed. 93].) ■ Nothing in the Hepburn Act conflicts with state rules on liability for negligence, and it sets forth no objective that would be hindered by the application of state law. Nevertheless the Supreme Court of the United States took the position in *Kansas City Southern Ry. Co.* v. *Van Zant, supra,* that the Hepburn Act was intended to occupy the entire field of free passes, that it superseded all state law in the field, and that the decisions of the federal courts were therefore controlling on the liability of a carrier for negligence to a holder of a pass containing an exculpatory provision. This court is bound by that decision and must therefore disregard the California law and apply the rules established by the decisions of the federal courts.

The United States Supreme Court has made it clear that a carrier may validly contract to release itself from liability for negligence to the holder of a free pass. (*Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440 [24 Sup. Ct. 408, 48 L. Ed. 513] ; *Boering* v. *Chesapeake Beach R. Co.,* 193 U. S. 442 [24 Sup. Ct. 515, 48 L. Ed. 742] ; *Charleston & Western Carolina Ry. Co.* v. *Thompson,* 234 U. S. 576 [34 Sup. Ct. 964, 58 L. Ed. 1476] ; *Kansas City Southern Ry. Co.* v. *Van Zant, supra;* see *Smith* v. *Atchison, T. & S. F. Ry. Co.* (C. C. A. 8), 194 Fed. 79 [114 C. C. A. 157] ; *Ellis* v. *Davis* (C. C. A. 5), 4 Fed. (2d) 323.) The federal courts have indicated, however, that a carrier may not protect itself from liability for "willful and wanton negligence." (*New York*

*Central R. R. Co.* v. *Mohney,* 252 U. S. 152 [40 Sup. Ct. 287, 64 L. Ed. 502]; *Virginia Beach Bus Line* v. *Campbell* (C. C. A. 4), 73 Fed. (2d) 97, cert. den. 294 U. S. 727 [55 Sup. Ct. 637, 79 L. Ed. 1258]; see *Northern Pac. Ry. Co.* v. *Adams, supra; Bush* v. *Bremner,* 36 Fed. (2d) 189; *Smith* v. *Atchison, T. & S. F. Ry. Co., supra.*) It is therefore necessary to determine what is meant by ''willful and wanton negligence.''

■ Negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm. (Rest. Torts, secs. 282, 283, 284; Prosser, Torts, secs. 30 et seq.) A negligent person has no desire to cause the harm that results from his carelessness, (Rest. Torts, sec. 282 (c)), and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. (Prosser, Torts, p. 261.) Willfulness and negligence are contradictory terms. (*Kelly* v. *Malott,* 135 Fed. 74 [67 C. C. A. 548]; *Neary* v. *Northern Pac. R. Co.,* 41 Mont. 480 [110 Pac. 226]; *Michels* v. *Boruta,* (Tex. Civ. App.) 122 S. W. (2d) 216.) If conduct is negligent, it is not willful; if it is willful, it is not negligent. It is frequently difficult, however, to characterize conduct as willful or negligent. A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result. (Rest. Torts, sec. 500 et seq.; Prosser, Torts, pp. 260, 261.) Such a tort has been labeled ''willful negligence,'' ''wanton and willful negligence,'' ''wanton and willful misconduct,'' and even ''gross negligence.'' It is most accurately designated as wanton and reckless misconduct. It involves no intention, as does willful misconduct, to do harm, and it differs from negligence in that it does involve an intention to perform an act that the actor knows, or should know, will very probably cause harm. (See *Kastel* v. *Stieber,* 215 Cal. 37, 46 [8 Pac. (2d) 474]; *Albers* v. *Shell Co. of Calif.,* 104 Cal. App. 733 [286 Pac. 752]; *Tognazzini* v. *Freeman,* 18 Cal. App. 468 [123 Pac. 540]; 45 C. J. 674.) Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal

consequences of willful misconduct. Thus, it justifies an award of punitive damages, and contributory negligence by the plaintiff is not a defense. (See cases cited in Prosser, Torts, p. 261.)

This is the type of misconduct that the federal courts characterize as "willful and wanton negligence." In *New York Central R. R. Co.* v. *Mohney, supra,* an engineer ran his train past two separate danger signals and it crashed into a train ahead. The collision resulted in injury to plaintiff, who was traveling on a free pass containing a provision releasing the railroad from liability for negligence. The State Court of Appeals found the engineer guilty of willful and wanton negligence, and the United States Supreme Court held the railroad liable, despite the release in the pass, on the ground that there was sufficient evidence to support the state court's finding of willful and wanton negligence. A railroad engineer who has deliberately run his train past two danger signals has intentionally performed so dangerous an act that he must have known that harm would probably result, and he is guilty of wanton and reckless misconduct rather than negligence. In *Virginia Beach Bus Line* v. *Campbell,* 73 Fed. (2d) 97, plaintiff, a holder of a free pass with a release provision, was injured by a collision at a dangerous crossing between the bus in which he was riding and a railroad train. The court permitted him to recover against the defendant bus company on the ground that the negligence of the driver in operating the bus at a rate of from 55 to 60 miles per hour over a dangerous railroad crossing was willful and wanton. Such conduct constitutes more than negligence. It is a dangerous act performed intentionally with the knowledge that it will probably cause harm.

■ Plaintiff contends that while the release is effective as to ordinary negligence, it is not effective as to gross negligence. The federal courts, however, have rejected any distinction between negligence and gross negligence; they recognize no degrees of negligence. (*New York Central Railroad Co.* v. *Lockwood,* 17 Wall. 357 [21 L. Ed. 627]; *Steamboat New World* v. *King,* 16 How. 469 [14 L. Ed. 1019]; *Milwaukee & St. Paul Ry. Co.* v. *Arms,* 91 U. S. 489, 494 [23 L. Ed. 374]; *Westre* v. *Chicago M. & St. Paul Ry. Co.,* 2 Fed. (2d) 227, and cases there cited.) If a person fails to exercise the degree of care that the law requires him to exercise under

the circumstances, he is negligent. There may be different standards of care in different circumstances but the failure to exercise such care in each case constitutes no more than negligence. (See Salmond, Torts (8th ed.), 461; Pollock, Torts (13th ed.), 457; Prosser, Torts, 256 et seq.; 1 Bevan, Negligence (4th ed.), 15; Harper, Law of Torts, 176; 1 Street, Foundations of Legal Liability, 99; Elliott, Degrees of Negligence, 6 So. Cal. L. Rev. 91.) Persons dealing with dangerous instrumentalities involving great risk of harm must exercise a greater amount of care than persons acting in less responsible capacities, but the former are no more negligent than the latter for failing to exercise the required care. (See cases cited in 45 C. J. 665, footnote 78.) ''There are no 'degrees' of care, as a matter of law; there are only different amounts of care, as a matter of fact; and 'gross' negligence is the same thing as ordinary negligence, 'with the addition', as Baron Rolfe put it, 'of a vituperative epithet'. *Wilson* v. *Brett* (1843), 11 M. & W. 113, 116; 152 Eng. Rep. 737.'' (Prosser, Torts, pp. 258, 259.) As stated by the United States Supreme Court in the Lockwood case, *supra:* ''We have already adverted to the tendency of judicial opinion adverse to the distinction between gross and ordinary negligence. . . . In each case, the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands, and hence it is more strictly accurate perhaps to call it simply 'negligence'.''

Some jurisdictions, including California, distinguish between ordinary and gross negligence. (*Kastel* v. *Stieber*, 215 Cal. 37 [8 Pac. (2d) 474]; *Albers* v. *Shell Co. of Calif.*, 104 Cal. App. 733 [286 Pac. 752]; *Walther* v. *Southern Pacific Co.*, 159 Cal. 769 [116 Pac. 51, 37 L. R. A. (N. S.) 235]; see 6 So. Cal. L. Rev. 91, 127.) This distinction amounts to a rule of policy that a failure to exercise due care in those situations where the risk of harm is great will give rise to legal consequences harsher than those arising from negligence in less hazardous situations. (See *Walther* v. *Southern Pacific Co., supra.*) The federal rule, however, clearly recognizes the validity of a release from liability for negligence, including what in California would constitute gross negligence, and holds such a release inapplicable only in the case of wanton and reckless misconduct as distinguished from negligence.

In the present case the alleged conduct of the switchman does not constitute wanton and reckless misconduct. There is no allegation that he intended to throw the switch the wrong way. Apparently, he did not know he was throwing the switch the wrong way and that harm would probably result. He was guilty of negligence alone. This negligence may have been "gross" under the California rule, but the federal cases are clear that such dereliction constitutes negligence and not wanton and reckless misconduct. "It would be going a great way to say that the failure of the switch tender to throw the switch so that the train would go on the main line was a wanton and malicious neglect. The only thing that can be said is that some one was careless, and that is admitted." (*Shelton* v. *Canadian Northern Ry. Co.*, 189 Fed. 153, 160; see *Milwaukee & St. Paul Ry. Co.* v. *Arms*, *supra*.) There is therefore no basis for a finding of reckless and wanton misconduct.

The judgment is reversed.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.