[Civ. No. 35526. First Dist., Div. Two. Mar. 22, 1976.]

KULDEEP KAUR BAINS et al., Plaintiffs and Appellants, v. WESTERN PACIFIC RAILROAD COMPANY et al., Defendants and Respondents.

**COUNSEL**

Steel & Arostegui, Islip, Cooke & Guthrie and Phillip A. Cooke for Plaintiffs and Appellants.

Bledsoe, Smith, Cathcard, Boyd & Eliot and R. Mitchell S. Boyd for Defendants and Respondents.

**OPINION**

**KANE, J.**—In this wrongful death, railroad crossing case plaintiffs appeal from a judgment in favor of the defendants entered upon a jury verdict. Although several contentions are advanced, plaintiffs candidly concede that the primary and pivotal issue is the refusal of the trial court to submit the issue of alleged willful misconduct to the jury.

■ It is, of course, axiomatic that a party is entitled to have the jury instructed as to his theory of the case provided (1) that he requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory (4 Witkin, Cal. Procedure (2d ed.) Trial, § 192, p. 3012. ■ It is also well established that in determining whether element (2) exists in a given case, the reviewing court must consider the evidence in the light most favorable to the party requesting the instruction.

■ It is now settled that "Three essential elements must be present to raise a negligent act to the level of willful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." (*Morgan* v. *Southern Pacific Trans. Co.* (1974) 37 Cal.App.3d 1006, 1012 [112 Cal.Rptr. 695]).

Our task therefore is to determine whether there is substantial evidence in the record to support each of the foregoing elements (*Morgan* v. *Southern Pacific Trans. Co., supra* at p. 1014; *Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33]).

### (1) *Actual or Constructive Knowledge of the Peril to Be Apprehended*

Although their argument under this heading is rather imprecise, appellants seem to contend that the "peril to be apprehended" is the potentiality of a collision between a vehicle and a train at an ungated crossing. To constitute willful misconduct, however, more must be shown than the bare possibility of injury. Otherwise, there would be little distinction between willful misconduct and negligence, since negligence is predicated upon a breach of duty which is imposed when there exists a foreseeable, or potential, risk of harm. " ' "Wilful misconduct" means something different from and more than negligence, however, gross . . . .' " (*Porter* v. *Hofman* (1938) 12 Cal.2d 445, 448 [85 P.2d 447]; see also *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 869 [118 P.2d 465]; *Lovett* v. *Hitchcock* (1961) 192 Cal.App.2d 806, 813 [14 Cal.Rptr. 117]; *Williams* v. *Carr* (1968) 68 Cal.2d 579, 583-584 [68 Cal.Rptr. 305, 440 P.2d 505]).

Almost every venture involves some risks, especially in the field of transportation. In the present case, appellants established that crossing accidents are reduced by 90 percent when automatic gates are installed at railroad crossings. All this demonstrates is that there is still the potentiality of a collision between a vehicle and a train even at gated crossings. Conceivably, if railroad bridges were constructed over all crossings, collisions would be totally eliminated. If such bridges were not constructed, under appellants' reasoning, a factual issue of willful misconduct would arise. The law does not impose such a burdensome duty, let alone label such inaction as willful or wanton misconduct. While it can always be contended that a particular accident should have been anticipated, it is only in situations where a defendant's conduct amounts to wantonness as opposed to a mere failure to perform a duty, that he will be held liable for willful misconduct (*Porter* v. *Hofman, supra* at pp. 448-449).

■ The evidence in this case, viewed most favorably to the plaintiffs, fails to establish that Western Pacific's railroad crossing at Plumas Arboga Road constituted an unusual peril, and further fails to establish that the train crew's conduct amounted to willful or wanton misconduct.

Thus, the evidence established without contradiction that the Plumas Arboga Road crossing itself was clearly visible to a vehicle approaching it from the same direction as decedent; that it was a crossing in a rural area which experienced comparatively little traffic, averaging 187 cars and 16 trains per day. In the 26 years prior to the accident in question only one other accident had occurred at this crossing. On that prior occasion an automobile struck the *second* engine unit, an accident which can only be considered due to obvious driver inattention.

Concerning the conduct of the train crew, plaintiffs established that the train was traveling between 64 and 76 miles per hour, a speed obviously in excess of the 50-mile-per-hour limit imposed by Western Pacific. The brakeman sighted decedent's car when the train was one quarter of a mile and the car 300-400 feet from the crossing, but did not set or apply the emergency brakes until the collision appeared "imminent," at which time the engine was approximately 160-190 feet from the crossing. The brakeman sounded the regular crossing whistle 10-15 seconds before the collision.

The above facts demonstrate only that defendants may have been negligent in the operation of their train and crossing. With regard to

Western Pacific's procedure of not applying the brakes unless a collision appeared imminent, as opposed to unavoidable, this again might be a basis for negligence, but not willful misconduct. There are innumerable situations in which operators of trains, cars, and bicycles do not apply their brakes until a collision becomes imminent. This is due largely because one moving vehicle has, by law, the right-of-way over the other. If the law did not condone such action, every intersection, railroad crossing, and merging lane would become a "yield the right-of-way" to every vehicle involved.

Plaintiffs also established other facts which are clearly irrelevant to the issue of willful and wanton misconduct. Thus, the fact that Western Pacific installed an automatic gate after the accident, and had been aware of car accidents at other railroad crossings in the area, might be germane to the question of negligence, but such evidence falls considerably short of the serious charge of willful or wanton misconduct.

Plaintiffs also attempted to show that a better braking system could have been used by Western Pacific trains. No doubt most accidents could be avoided if better equipment, employees, and procedures were used by defendants. However, willful misconduct must be shown by establishing the dangerousness of the then existing situation, and there is nothing in the record to show that defendants' brakes were defective.

In summary, plaintiffs have failed to show that defendants were guilty of creating or maintaining an extremely dangerous condition or acted in an extremely dangerous manner, and thus failed to establish any "peril to be apprehended," other than the always possible peril of a collision at any intersecting path of moving vehicles. Therefore, the first element of willful misconduct was lacking and the trial judge was correct in refusing to instruct the jury on willful misconduct.

(2) *Actual or Constructive Knowledge That Injury*
*Is Probable, as Opposed to Possible, Result*
*of the Danger*

■ Even if defendants had knowledge of a special "peril to be apprehended," the evidence presented at the trial does not show that injury was a probable, as opposed to possible, result of the danger.

A "probable" consequence is defined in Black's Law Dictionary (rev. 4th ed.), as "One that is more likely to follow its supposed cause than it is not to follow it."

This second essential element of willful misconduct has also been defined as deliberate, intentional, or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, " ' " " '*that danger is likely to result therefrom . . .*' " ' " *(Parsons* v. *Fuller* (1937) 8 Cal.2d 463, 468 [66 P.2d 430]; *Porter* v. *Hofman, supra* at p. 447), or that "it is highly probable that harm will result" *(Donnelly* v. *Southern Pacific Co., supra* at p. 869; *Givens* v. *Southern Pacific Co.* (1961) 194 Cal.App.2d 39, at pp. 43-44 [14 Cal.Rptr. 736]; *Morgan* v. *Southern Pacific Trans. Co., supra* at p. 1011).

Here, plaintiffs have merely shown that accidents at Plumas Arboga Road were, at most, foreseeable, but not probable. The facts clearly show that traffic was light on the road in question, the accident history was practically nonexistent, and there was no indication that the railroad crossing was in a defective condition.

In view of our conclusion that elements (1) and (2) of the *Morgan* test have not been met, it is unnecessary to consider or discuss element (3).

Plaintiffs do raise one other issue which must be reached, however. Plaintiffs contend that the trial court erred in refusing to instruct the jury on the doctrine of last clear chance. We do not agree.

In the first place, the instruction submitted by plaintiffs (plaintiffs' instruction No. 4) is a woefully inadequate statement of the doctrine *(Brandelius* v. *City & County of S. F.* (1957) 47 Cal.2d 729 [306 P.2d 432]).

Secondly, in the case at bench the evidence as to the all important time element of the *Brandelius* formula demonstrated—as a matter of law—that defendants had no last clear chance to avoid the collision (cf. *Todd* v. *Southern Pac. Co.* (1960) 184 Cal.App.2d 376 [7 Cal.Rptr. 448]; *Miller* v. *Western Pac. R. R. Co.* (1962) 207 Cal.App.2d 581 [24 Cal.Rptr. 785]).

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.