[No. B001217. Second Dist., Div. Five. Aug. 26, 1985.]

RICHARD NEW et al., Plaintiffs and Appellants, v.
CONSOLIDATED ROCK PRODUCTS COMPANY,
Defendant and Appellant.

BRUCE A. WILLIAMS, Plaintiff and Appellant, v.
CONSOLIDATED ROCK PRODUCTS COMPANY,
Defendant and Appellant.

682

## Counsel

Ghitterman, Hourigan, Grossman, Finestone & Schumaker, Daniel Jason Krindle, Nordman, Cormany, Hair & Compton and Glen M. Reiser for Plaintiffs and Appellants.

Archbald & Spray, Horvitz & Levy, Barry R. Levy and David S. Ettinger for Defendant and Appellant.

## Opinion

**FEINERMAN, P. J.**—Plaintiffs, Richard New and Bruce A. Williams, were injured while riding their motorcycles on the property of defendant, Consolidated Rock Products. In a pretrial ruling, the superior court held that defendant was entitled to the protection of Civil Code section 846, which immunizes landholders from liability to nonpaying recreational users of their property, except where the landholder willfully or maliciously fails to warn or guard against a dangerous condition. By way of a special verdict, the jury found that defendant had acted willfully or in conscious disregard of its duty to plaintiffs. The jury further found that plaintiff Williams had been damaged in the amount of $1,429,927.69 and that plaintiff New had been damaged in the amount of $346,506.43. The jury assessed plaintiff Williams' comparative negligence at 30 percent and plaintiff New's comparative negligence at 32 percent. Defendant's motion for new trial was denied.

Defendant appeals, contending that the jury was erroneously instructed as to defendant's duty of care under Civil Code section 846, and that expert testimony was erroneously admitted in evidence. Plaintiffs have filed a cross-appeal arguing that defendant was not entitled to the protection of Civil Code section 846 because it did not give permission to the public to

use its land for recreational purposes and should have been held liable to plaintiffs for ordinary negligence. We find that there is no merit to defendant's contentions and that the cross-appeal is therefore moot.

## FACTS

The incident which gave rise to the lawsuit occurred on July 23, 1977, when plaintiffs rode their motorcycles over a 20-foot cliff at defendant's gravel quarry. The quarry was located along the Santa Clara River bottom in Ventura County. Defendant posted "No TRESPASSING" signs on its property, but they were ineffectual to deter numerous motorcyclists, who used the property on a habitual basis. The cliff plaintiffs rode over was created when defendant enlarged an excavation pit by cutting away the end of a two-lane haul road, leaving a sheer, almost perpendicular, 20-foot drop.

There was conflicting evidence introduced as to the precautions taken by defendant to warn of the danger posed by the cliff at the end of the abandoned road. Defendant claimed to have constructed two five-foot high earthen barriers or berms, 150 feet from each other, one located within 200 feet of the cliff, the other near a turnoff at the beginning of the road. Defendant also claimed that it posted numerous "No TRESPASSING" signs around its property, including 15 in the immediate vicinity of the pit and one at the turnoff to the abandoned road. These signs read, "NO TRESPASSING QUARRY PROPERTY THIS PROPERTY MAY BE USED AT ANY TIME FOR EXCAVATION." Defendant had frequent and substantial problems with vandalism of its signs, which it attempted to remedy with a program of weekly inspection, maintenance and replacement. Defendant also hired a security guard to protect its property and to deter trespassers. The parties dispute whether the security guard was also engaged to warn motorcyclists of dangers on the property.

Plaintiffs' evidence was that there was but a single earthen barrier in the road, that it was only 12 inches high and 12 inches wide, that it had been constructed to prevent defendant's own large trucks from going over the cliff, and that it was covered with motorcycle tracks, leading cyclists to believe that it was a jump. Plaintiffs also introduced evidence that there were no "No TRESPASSING" signs along the road leading to the cliff, nor any other warning signs; that the road was cut in a manner which created the optical illusion that there was no break in the continuity of the road; and that, aside from the foot-high barrier, the road was slick and fast as it proceeded over the cliff.

Over objection, plaintiffs were permitted to call David Royer, a traffic safety engineer, with expertise on the subject of driver reaction to highway

warning signs. The essence of his testimony was that drivers, including motorcyclists, driving 25 miles an hour or more, would not be able to read more than three words on a sign, and that if defendant's "No Trespassing" sign had been in place, motorcyclists would not have read beyond the word "Quarry." Royer also testified about the type of signs and barriers which would typically be used to warn motorists that a road was about to terminate.

Defendant, also over objection, called John McKibben, an automotive engineer with extensive experience in investigating and reconstructing vehicle crashes, including those involving motorcycles. McKibben had 30 years' experience as a recreational motorcyclist, as a motorcycle racer, and as a motorcycle driving instructor. He testified that the accident scene, as depicted on a photograph of the haul road, would have conveyed to a cyclist of ordinary prudence that there was a sharp descent in the road. He further testified that five-foot earthen berms would have warned a reasonable cyclist that the road ahead was closed and that if he were going to proceed, he should do so with caution.

### Jury Instructions

Defendant does not contest the sufficiency of the evidence. It complains that the jury was inappropriately advised of the standard of care owed by defendant under Civil Code section 846. At the time of the accident, section 846 read as follows: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section. [¶] An owner of any estate in real property who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the

landowner. [¶] Nothing in this section creates a duty of care or ground of liability for injury to person or property."[1]

■ Defendant complains of the following instruction: "Willful misconduct is intentional wrongful conduct done either with knowledge, express or implied, that serious injury to another will probably result or with a conscious disregard of such probable results. An intent to injure is not a necessary element of willful misconduct. [¶] *To prove misconduct it is not necessary to establish that the defendant recognized its conduct as dangerous. It is sufficient if it be established that a reasonable man under the same or similar circumstances would be aware of the dangerous character of such conduct.*" (Italics added.)

Defendant pejoratively contends that the emphasized portion of the instruction "allowed the jury to find Conrock liable if it had failed to exercise reasonable care in guarding or warning against the dangerous condition on its property, regardless of Conrock's actual state of mind. This was clearly a negligence standard." Defendant's gossamer argument is both factually and legally incorrect. The instruction correctly defines wilful misconduct (*Chappell* v. *Palmer* (1970) 10 Cal.App.3d 71, 73, 74 [88 Cal.Rptr. 710]) and does not allow the jury to substitute an ordinary negligence standard for a wilful misconduct standard.

Civil Code section 846 was first enacted in 1963. At the time, California law provided that landowners owed a duty of ordinary care to invitees, but that trespassers and licensees were obliged to take the premises as they found them, and that the possessor of the land owed them only a duty of refraining from wanton and wilful injury, insofar as the condition of the premises was concerned. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 114 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) With respect to injury resulting from the active conduct of the landowner, however, case law extended a duty of ordinary care even to licensees. (*Oettinger* v. *Stewart* (1944) 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221].) Thus, by enacting Civil Code section 846, the Legislature immunized landholders from the liability they would otherwise have incurred for ordinary negligence toward nonpaying recreational invitees, as well as toward licensees injured through the active conduct of the landholder.

In 1968, the Supreme Court abolished the common law distinction between the duties owed to trespassers, licensees and invitees, holding that

---

[1]*Civil Code section 846 has since been amended to apply to use of property for "any recreational purpose," encompassing "riding, including . . . all . . . types of vehicular riding . . . ."*

the "proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 119.) The decision in *Rowland* v. *Christian, supra,* had no effect upon Civil Code section 846 which continued to limit the liability of landholders to nonpaying recreational users of their land according to the terms of the statute. (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 788 [147 Cal.Rptr. 431]; *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224], overruled on other grounds in *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168].) The philosophy expressed by the Legislature in Civil Code section 846 was consistent with that expressed by the court in *Rowland* v. *Christian, supra,* in that the statute predicated liability not on the common law status of the plaintiff, but on the conduct of the defendant.

■ The concept of wilful misconduct has a well-established, well-defined meaning in California law. "Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results. [Citation.]" (*O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903, 912 [159 Cal.Rptr. 125].)

" 'Wilful or wanton misconduct' travels under several other names. Its aliases include 'serious and wilful misconduct,' 'wanton misconduct,' 'reckless disregard,' 'recklessness,' and combinations of some or all of these. These terms are interchangeable because they all identify the same thing— 'an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care' (Prosser, Law of Torts (4th ed. 1971), § 34, p. 184; see also 35 Cal.Jur.2d, Negligence, § 200, p. 722). 'The usual meaning assigned to "wilful," "wanton" or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.' (Prosser, Law of Torts (4th ed. 1971) § 34, p. 185.)" (*Morgan* v. *Southern Pacific Trans. Co.* (1974) 37 Cal.App.3d 1006, 1011 [112 Cal.Rptr. 695].)

■ "Three essential elements must be present to raise a negligent act to the level of wilful misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious

failure to act to avoid the peril. (*Williams* v. *Carr*, 68 Cal.2d 579 [68 Cal.Rptr. 305, 440 P.2d 505]; *Olea* v. *Southern Pacific Co.*, *supra*, 272 Cal.App.2d 261, 265.)" (*Ibid.*, at p. 1012.)

■ It is obvious that constructive knowledge must be measured by an objective standard, since there is no other way to measure it. Thus, the cases have held "that, for the purposes of determining whether the circum-stances in a given situation are sufficient to disclose implied knowledge of the probability of injury from an act or omission, an external standard is applied." (*Cope* v. *Davison* (1947) 30 Cal.2d 193, 199 [180 P.2d 873, 171 A.L.R. 667].) "The . . . test that has evolved . . . in wilful misconduct cases is whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct." (*Chappell* v. *Palmer* (1965) 236 Cal.App.2d 34, 37 [45 Cal.Rptr. 686].) "If conduct is sufficiently lacking in consideration for the rights of others, reckless, heedless to an extreme, and indifferent to the consequences it may impose, then, regardless of the actual state of mind of the actor and his actual concern for the rights of others, we call it wilful misconduct, and apply to it the consequences and legal rules which we use in the field of intended torts." (*Pelletti* v. *Membrila* (1965) 234 Cal.App.2d 606, 611 [44 Cal.Rptr. 588]; *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 402 [143 Cal.Rptr. 13, 572 P.2d 1155].) ■ The portion of the instruction which defendant herein complains about does no more than state the well-established objective component of the test of willful misconduct. (*Chappell* v. *Palmer*, *supra*, 10 Cal.App.3d 71, 74.)

Furthermore, the instruction cannot be viewed in isolation. It must be examined in the context of all the instructions given. Thus, at defendant's request, the jury was also instructed: "In this action, each plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: [¶] (1) That a dangerous condition existed on defendant CONROCK's property; and [¶] (2) That defendant CON-ROCK failed to guard or warn against the dangerous condition; and [¶] (3) That defendant's failure to guard or warn, was willful or in conscious dis-regard of the probability of serious injury to others; and [¶] (4) That the failure to guard or warn was a proximate cause of injury and damage to plaintiff; and [¶] (5) The nature and extent of the injuries claimed to have been so suffered, the elements of plaintiff's damages and the amounts there-of. [¶] Defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: [¶] (1) That plaintiff was negligent; and [¶] (2) That plaintiff's negligence contrib-uted as a proximate cause to the injury and damages claimed to have been suffered."

At plaintiffs' request the jury was further instructed: "If a defendant either willfully or with a conscious disregard of the safety of others, fails to guard or warn against a dangerous condition upon its land, a plaintiff who is injured as a proximate result of such failure is entitled to recover compensation for such injury from the defendant. [¶] Thus, the plaintiff is entitled to a verdict in this case if you find, in accordance with my instructions: [¶] 1. That the defendant willfully, or with a conscious disregard of the safety of others failed to guard or warn against a dangerous condition upon its land, with knowledge, express or implied, that serious injury to another would probably result; and [¶] 2. That such failure was a proximate cause of injury to the plaintiff."

"As previously stated, a person acts with conscious disregard for the safety of others when he is aware of the probable dangerous consequences of his conduct and wilfully and deliberately fails to avoid those consequences."

The jury was also instructed on the definition of ordinary negligence for the purpose of assessing plaintiffs' comparative negligence. Given the totality of the instructions, it is highly unlikely that the jury was confused as to the appropriate standard for measuring defendant's liability.

■ Defendant argues, however, that by using the phrase "willful or malicious" in the statute, the Legislature intended to impose liability only for something more than ordinary willful misconduct, namely that it intended to limit liability to situations where a defendant acted with a subjectively culpable state of mind. Defendant seeks support for its position from out-of-state cases interpreting similar laws governing liability of a landlord for recreational use of his property.

Defendant's argument must fail for three reasons. First, malice, for purposes of tort law, is defined by both statute and case law as conduct which is intended to cause injury or which is carried on with a conscious disregard of the safety of others. (Civ. Code, § 3294, subd. (c)(1); *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 894-895 [157 Cal.Rptr. 693, 598 P.2d 854].) Defendant requested and received an instruction which predicated liability on the "conscious disregard" standard. Malice, like wilfulness, is measured by an objective standard. (*Pelletti* v. *Membrila, supra,* 234 Cal.App.2d 606, 611.)

Second, in enacting a statute, the Legislature is presumed to be aware of judicial decisions relevant to its subject matter. (*English* v. *Marin Mun. Water Dist., supra,* 66 Cal.App.3d 725, 731.) The cases defining willful

misconduct, including the objective element of the definition, antedated enactment of Civil Code section 846.

Third, the cases interpreting the meaning of the term wilful misconduct in section 846 have applied the standard tort definition of the term as applied in California. (*O'Shea* v. *Claude C. Wood Co., supra,* 97 Cal.App.3d 903, 912; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 744 [140 Cal.Rptr. 905].) The Legislature has amended section 846 since those decisions, but it has not altered the phrase "willful or malicious," nor has it added a definition of those terms to the statute. It is too late in the day for this court to seek a different meaning for the statute by looking to the laws of other states. If the term "willful or malicious" in section 846 is to have a more restrictive meaning than that phrase currently has in California tort law, it is for the Legislature to express such intent in clear and direct language.

## EXPERT TESTIMONY

■ Under Evidence Code section 801, subdivision (a), for an expert witness' opinion testimony to be admissible, it must relate to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. As the Supreme Court indicated in *People* v. *McDonald* (1984) 37 Cal.3d 351, at page 367 [208 Cal.Rptr. 236, 690 P.2d 709], ". . . the admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness' (*People* v. *Cole* (1956) 47 Cal.2d 99 [301 P.2d 854, 56 A.L.R.2d 1435].)"

■ Defendant contends that Royer should not have been permitted to testify because the subject of his testimony was within the common experience of the jury and because his testimony unfairly measured defendant's conduct by the standards of a trained professional traffic safety engineer. We do not agree that the subject of Royer's testimony was within the ken of a lay juror insofar as it pertained to the capacity of an operator of a vehicle traveling at a speed of 25 miles an hour or more to perceive various posted warnings on signs containing more than three words. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 924 [148 Cal.Rptr. 389, 582 P.2d 980]; see also *Von Tagen By and Through Von Tagen* v. *United States*

(N.D.Cal. 1983) 557 F.Supp. 256, 260.) Furthermore, in light of the total instructions on defendant's duty of care, we see no realistic possibility that the jury would have held defendant to the standard of a safety engineer.

We agree with plaintiffs that Royer's testimony was relevant to the issue of plaintiffs' contributory negligence. Any undue impact which Royer's testimony might have had was negated by McKibben's testimony, which was no less harmful to plaintiffs' case than Royer's was to defendant's. The jury was appropriately instructed on the weight to accord expert evidence. There was no error.

This conclusion, as noted, moots plaintiffs' cross-appeal.

The judgment is affirmed.

Eagleson, J., concurred.

ASHBY, J.—I concur in the result reached by the majority.

From defendant's point of view, this is a case where defendant is being held liable for injuries suffered by trespassers even though defendant has tried valiantly, but in vain, to hold off trespassers who persist in riding roughshod over both defendant's rights and its land in spite of all defendant's reasonable efforts to deter them. That was arguably true up to the time of the injuries involved in this case.

Viewing the evidence as we must on appeal most favorably to the prevailing party in the court below, the relevant facts are as follows:

Over the years defendant's property was widely used by motorcyclists. This was a daily problem for defendant, and worse on weekends. In an attempt to deter such use, defendant hired a security guard on weekends and posted signs reading "NO TRESPASSING QUARRY PROPERTY THIS PROPERTY MAY BE USED AT ANY TIME FOR EXCAVATION" along the main haul road, the road used by defendant's trucks to carry loads from the quarry. The no trespassing signs were constantly vandalized, but regularly replaced by defendant. These measures were ineffective in deterring use of the property by motorcyclists.

The hazard involved in the instant accident, however, was newly created. Defendant expanded its gravel quarry at the termination of the haul road and therefore abandoned that portion of the haul road. Defendant made a fork in the road and created a new haul road for defendant's equipment. Defendant cut into the abandoned portion in such a way as to create a cliff

precipitously dropping 20 to 30 feet into the excavation. This hazard was created in early July 1977, two to three weeks before the accident.

Defendant's production superintendent was aware, when he ordered the haul road cut in early July, that many cyclists had previously used that road. After the cutting he was aware that the road now ended in a cliff, which he considered dangerous because of the high probability of serious injury should a motorcyclist go off the edge. Nevertheless, he caused no signs to be put up warning that the road ended precipitously with a drop into the excavation pit. None of the previously mentioned no trespassing signs existed along the now abandoned portion of the road. The superintendent did not have any new signs put up because "nobody paid any attention to the signs I already had up I didn't figure one more sign would do any good."

There were no signs whatever warning of the precipitous termination of the abandoned road at the edge of the cliff. Worse yet, the road was cut in such a way as to create an optical illusion that there was no break in the road but merely a dip. Plaintiff New did not see the edge until he was five feet from it. In addition, the road was hard, slick and fast at that point. On July 16, a security guard advised the superintendent that the road was slick, the edge was hard to see, and that a warning device or barricade was needed. The superintendant replied that he would talk to the board of directors.

Defendant claimed that it had placed two earthen barriers, each about five feet high, across the road to indicate the road was closed. According to defendant the first of these barriers was near the fork of the abandoned road and the second was about 150 feet beyond the first and 200 feet before the cliff. This was contradicted by plaintiff's evidence which showed there was only one "dirt row" across the road, which was only 12 inches high and 12 inches wide, and which had track marks showing that it had been used by motorcyclists as a jump. In any event, the dirt mound gave no warning that the road thereafter terminated abruptly at a cliff.

Thus, no matter how reasonable defendant's efforts to warn and deter were generally, as to the specific hazard which resulted in plaintiffs' injuries defendant did not meet the standard required to avoid liability.