Randy Duane ROST, Joe Vester Rost, and Ruby Rost, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 85–2097.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1986.

Decided Oct. 23, 1986.

---

Walter H. Walker, III, Sterns, Smith & Nelson, San Francisco, Cal., for plaintiffs-appellees.

Yoshinori H.T. Himel, Asst. U.S. Atty., Sacramento, Cal., for defendant-appellant.

Before FARRIS, HALL and KOZINSKI, Circuit Judges.

FARRIS, Circuit Judge:

Defendant United States appeals from a judgment in favor of Plaintiffs Randy, Joe, and Ruby Rost in this action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for personal injury occurring in the Stanislaus National Forest in California. Randy Rost, as a passenger in the back of a short bed pickup truck with camper shell attached, was impaled on the extending piece of a steel road closure gate as it entered through the passenger's side of the truck. The gate was owned by the government and anchored on government property. The trial court found that the design and placement of the gate made it an unsafe and dangerous structure, and that the government wilfully failed to guard or warn against the peril it posed. The court held that Randy Rost was injured as a result of the government's wilful misconduct.

For liability to attach, the government must have committed wilful misconduct as defined by Cal.Civ.Code § 846. The Government contends that the trial court erred in its application of Section 846. It argues that under the facts of this case, the court was required to find that the gate was free-swinging for a sufficient time to charge the government with notice. Under this theory, unless the gate was free-swinging, the facts require a conclusion that the truck driver negligently left the roadway and contacted the gate. Under the latter hypothesis, the government argues that only its negligence would be demonstrated, not wilful misconduct.

## FACTS

On the night of August 3, 1980, Randy Rost suffered severe physical injuries when the truck in which he was riding came in contact with the point of the horizontal extension of a U.S. Forest Service road closure gate. Rost sat in the back of a flat bed pick-up truck, which was covered by a metal camper shell. He was impaled on the extension as it entered through the front of the passenger's side near the side-view mirror and traveled the length of the truck. Rost was driven out of the rear of the camper shell through the tail gate. The road closure gate was constructed of steel and consisted of three set posts (a hinge post on the east side of the road, an open post on the east side of the road approximately 20 feet south of the hinge post, a close post on the west side of the road opposite the hinge post), and a 24' crossbar made of steel piping. In the open position, a portion of the crossbar 2⅞" in diameter extends four feet beyond the open post pointing toward oncoming traffic. If unaltered and correctly secured to the open post, the extension would come within thirteen and one half inches of the edge of the oncoming traffic lane. The gate is dark green, unlighted, without warning signs or

markers, located on a curve in the road, and backed up against flora. As such, the gate is effectively camouflaged to drivers of oncoming vehicles.

Forest Service employees 1) designed and installed the gate without regard to applicable rules or regulations; 2) had responsibility for the maintenance of all road closure gates on Forest Service land; 3) knew that this gate had been bent for at least a year prior to the accident; and 4) failed to repair the gate because of other priorities.

The trial court found that it was foreseeable that vehicles might contact the gate, and that the Service knew or should have known that injury would be a probable result of its failure to guard or warn against the danger presented by the design, placement, and bent condition of the gate. The court held that Rost was injured as a result of the Service's failure to act to avoid the known danger. The court concluded that the government's failure to avoid the danger was wilful. Rost's injuries were extensive. The amount of the award, $397,531.60 in special damages and $250,000 in general damages, is not challenged.

The government argues that there was no evidence that the truck left the roadway and, therefore, it was impossible for the truck to strike the gate unless it was unattached and free swinging. It contends that there is no showing of notice to the government that the gate was unattached and free swinging and that the record establishes only that injury was possible as opposed to probable. The government argues, therefore, that its failure to follow safety rules and regulations did not amount to wilful misconduct, but mere negligence. It concludes that there was no evidence to justify a holding that the design of the gate or its placement made the accident probable.

## STANDARD OF REVIEW

Judgments under the Federal Tort Claims Act are reviewed under the federal standard of review. *Vesey v. United States*, 626 F.2d 627, 629 (9th Cir.1980). Findings of fact are reviewed for clear error. Fed.R.Civ.P. 52(a); *United States v. McConney*, 728 F.2d 1195, 1200 n. 5 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978). Although the fixing of an applicable standard of care is an act subject to *de novo* review, *Miller*, 587 F.2d at 994, the application of a required or statutory standard to the facts of a case is reviewed for clear error. *Rooney v. United States*, 634 F.2d 1238, 1244 (9th Cir.1980); *see also Ayers v. United States*, 750 F.2d 449, 552 & n. 2 (5th Cir.1985). It is undisputed that the appropriate standard is "wilful or malicious conduct." Cal.Civ.Code § 846 (West 1980). The trial court's conclusion that the government wilfully failed to guard or warn the public of the peril posed by the gate is reviewed for clear error.

## DISCUSSION

The Federal Tort Claims Act provides for government liability on the same conditions as those provided for private persons under state law. 28 U.S.C. § 1346(b). Under California law, the government is liable as a land owner only for "willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Cal.Civ.Code § 846 (West 1980). Although few cases define wilful or malicious failure to guard or warn under Section 846, the "concept of willful misconduct has a well-established, well-defined meaning [under California law]." *New v. Consolidated Rock Products Co.*, 171 Cal.App.3d 681, 689, 217 Cal.Rptr. 522, 525 (1985).

"Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with wanton and reckless disregard of the possible results." *O'Shea v. Claude C. Wood Co.*, 97 Cal.App.3d 903, 912, 159 Cal.Rptr. 125 (1979). Several phrases express this standard including: " 'serious and wilful misconduct,' 'wanton misconduct,' 'reckless disregard,' 'recklessness,' and combinations of some or

all or these." *New*, 171 Cal.App.3d at 689, 217 Cal.Rptr. at 525–26 (quoting Prosser, Law of Torts, § 34, p. 184 (4th ed. 1971)). The meaning assigned to wilful misconduct by the California courts is any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable. *New*, 171 Cal.App.3d at 689, 217 Cal.Rptr. at 526; *Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 1011, 112 Cal.Rptr. 695, 698 (1974). In *Morgan*, the California Court of Appeals set out three essential elements that must be present before a negligent act becomes wilful misconduct: "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Id.* at 1012, 112 Cal.Rptr. at 698.

Constructive knowledge is measured by an objective standard: "whether a reasonable man under the same or similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct." *Chappell v. Palmer*, 236 Cal. App.2d 34, 37, 45 Cal.Rptr. 686, 688 (1965). *See also New*, 171 Cal.App.3d at 690, 217 Cal.Rptr. at 526. Where an actor's conduct is of an unreasonable character and in disregard of a known risk, or one that should have been known, and that risk is so great as to make it highly probable that harm will follow, we term it wilful misconduct "and apply to it the consequences and legal rules which we use in the field of intended torts." *New* 171 Cal.App.3d at 690, 217 Cal.Rptr. at 526 (quoting *Pelletti v. Membrila*, 234 Cal.App.2d 606, 611, 44 Cal.Rptr. 588, 590 (1965)). The actor is not protected because he personally failed to recognize the precise peril posed. "His inability to realize the danger may be due ... to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of the circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct." *Pelletti*, 234 Cal.App.2d at 611, 44 Cal.Rptr. at 591.

If the government had actual or constructive knowledge of the peril, and actual or constructive knowledge that probable injury would result from the peril, and consciously failed to act to avoid the injury, the statutory requirements are met. *See Morgan*, 37 Cal.App.3d at 1012, 112 Cal. Rptr. at 698. *See also New*, 171 Cal. App.3d at 688–89, 217 Cal.Rptr. at 525–526.

The government argues that the trial court's failure to make findings on whether the truck struck the gate while inside or outside of the traffic lane—whether the driver was negligent—is fatal to the judgment. It argues that the judgment cannot stand under a "swinging arm" theory as there was no evidence that the gate was unfastened at any time before the accident and no evidence that it had been unfastened long enough for the government to refasten it before the accident (notice element). To bolster this argument, the government points to the fact that the truck passed by the gate three times before the accident. We understand but reject the government's argument. The gate was dark green, unlighted, without warning signs or markers, located on a curve in the road, and backed up against flora. As such, it was camouflaged to drivers of oncoming vehicles. The open post was placed thirteen and one half inches from the traveled roadway. The extending piece of the crossbar was bent toward the roadway bringing its "lance-like" point to within 9 inches of the oncoming traffic lane. Service employees knew of the bent condition for at least a year before the accident, yet failed to repair it. The government's expert testified that the extending piece of the crossbar would cut through a camper shell "like a hot knife through butter." Whether the gate was fastened to the open post or free swinging is not critical. The safety margin of 9 inches is so inconsequential under these facts as to make it not only probable but certain that injury would follow.

The failure of the court to make a specific finding of whether the gate was fastened to the open post, under these undisputed facts, is not fatal. Even if the truck veered off the roadway for the few inches necessary to contact the point of the crossbar, that fact does not alter the government's wilful conduct. The trial court applied California law to the facts and concluded that the government knew or should have known of the peril posed by the gate both in its design and bent condition, had actual or constructive knowledge that injury to a member of the public was probable as a result of its failure to guard or warn against the gate's dangerous condition, and consciously failed to guard or warn against the peril. *See* Cal.Civ.Code § 846. It is undisputed that 1) the gate was in violation of known safety regulations; 2) Service employees knew of the bent condition of the gate; and 3) the Service consciously failed to act because it had other priorities. Probability is established by all of the circumstances. *See Morgan*, 37 Cal.App.3d at 1014–15, 112 Cal.Rptr. at 700. *See also Pelletti*, 234 Cal.App.2d at 611, 44 Cal. Rptr. at 591. We find no error.

## CONCLUSION

The condition of the gate presented a foreseeable hazard. Service personnel knew of the danger presented to motorists, and consciously failed to act to avoid the extant peril because of other priorities. The trial court's conclusion that the Service wilfully failed to guard or warn against a known dangerous condition, and that such acts caused Rost's injuries, is not clearly erroneous.

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting.

The majority misconstrues the standard of California Civil Code section 846, exposing landowners who make their property available to the public for recreational uses to liability from which the California legislature meant to exempt them. While the extensive and painful injuries suffered by the young man who is the principal plaintiff evoke compassion, allowing him to recover erodes statutory language and ties the hands of legislators who would stem the tide of tort liability engulfing every facet of modern life.

The majority acknowledges that liability here is governed by a standard higher than negligence, but it does not pause sufficiently to examine the full text and purpose of the statute it construes. Civil Code section 846 is designed to protect from liability property owners who open their land to the public for free recreational use. It consists of five paragraphs, almost all of them exculpatory in tone and meaning.[1] The first

1. The section provides:

An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

A "recreational purpose," as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picknicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for

paragraph states that, except as provided elsewhere in the section, "[a]n owner of any estate or any other interest in real property ... owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose...." Cal.Civ.Code § 846 (West 1980). After defining recreational use to include a broad range of outdoor activities in paragraph two, paragraph three elaborates on the warranties a property owner does *not* make and on the liability he does *not* assume. Thus, a property owner who allows the public to use his land for recreational purposes "does not thereby ... extend any assurance that the premises are safe for such purpose[s] ... [or] assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted...." *Id.* The final paragraph provides: "Nothing in this section creates a duty of care or ground of liability for injury to person or property." *Id.*

The only portion of section 846 exposing the landowner to liability is the fourth paragraph which provides, in the narrowest terms, that "[t]his section does not limit the liability which otherwise exists ... for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity...." *Id.* It is on the basis of this exception that the majority imposes liability on the United States for failure to fix a gate on a deserted mountain road in the middle of a million-acre national forest.

This appears to be the quintessential case for invoking the protections of section 846.

I cannot interpret section 846, as does the majority, according to rigid formulas encrusted upon the statute by cases dealing with situations entirely different from this one.[2] I would interpret the section in light of its scope and purpose. In passing section 846, the California legislature sought to encourage landowners to open their gates so that the public could enjoy certain recreational uses free of charge. *Simpson v. United States*, 652 F.2d 831, 833 (9th Cir.1981). These recreational uses, such as "fishing, hunting, camping, water sports, hiking, spelunking, [etc.]", by their nature, call for large open areas that must be left in an unimproved or partially improved condition. Making large areas of open land entirely safe could be prohibitively expensive and might impair the land's natural beauty, undermining its suitability for recreational uses. The legislature therefore gave landowners broad protection: It exempted them from liability for their own negligence, allowing liability only for willful or malicious conduct.

The majority concludes that the conduct of the United States here was "willful or malicious" because the construction of the gate violated safety regulations and because park employees were aware for over a year that the gate was bent about four inches toward the roadway. The court concludes that "the [remaining] safety margin of 9 inches is so inconsequential under these facts as to make it not only probable but certain that injury would follow." Majority op at 451. I respectfully disagree.

---

the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

Nothing in this section creates a duty of care or ground of liability for injury to person or property.

Cal.Civ.Code § 846 (West 1980).

**2.** None of the cases upon which the majority relies come from the California Supreme Court. There is thus no definitive construction of section 846 to which we must defer. Our responsibility is to interpret state law as would the state's highest court. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir.1983). Interpretations by intermediate appellate courts are instructive, but they are not to be applied mechanically. 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4507, at 95 (1982); *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins. Group*, 750 F.2d 619 (7th Cir. 1984).

In applying the standard of liability, the majority does not sufficiently consider the context in which the accident occurred, a context crucial to the purpose of section 846. The gatepost in question was positioned deep within the Stanislaus National Forest on a road with an average daily traffic of only 70 vehicles, a small portion of which was nighttime traffic. *See Bains v. Western R.R.*, 56 Cal.App.3d 902, 128 Cal.Rptr. 778 (1976) (no knowledge that injury was probable where traffic at railroad crossing was 187 cars per day). There was no evidence that the gatepost had caused any other injury in the eight years of its prior existence. *See id.* (one prior accident). Nor was there evidence of similar injury from a gatepost anywhere else in the huge forest.

That the gatepost violated safety regulations and that park rangers were aware it needed fixing adds up to no more than negligence. *See Gard v. United States*, 594 F.2d 1230 (9th Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979) (violation of Nevada statute requiring mine owner to keep shaft in good repair was not sufficient to constitute of "willful or malicious failure to guard or warn"). Personnel guarding and maintaining large open areas are, of necessity, spread thin. Mistakes will happen, as they did in this case. But, in passing section 846, the legislature made a deliberate choice to have the public, not the landowner, bear the risk, even when those mistakes amount to negligence. We may not agree with that policy, but as judges, federal judges at that, we are not free to tamper with the state legislature's considered decision.

In a different context, at a different time, but interpreting very similar statutory language, the California Supreme Court endorsed the following proposition: "'It would be going a great way to say that the failure of the switch tender to throw the switch so that the train would go on the main line was wanton and malicious neglect. The only thing that can be said is that some one was careless....'" *Donnelly v. Southern Pac. Co.*, 18 Cal.2d 863, 872, 118 P.2d 465 (1941) (quoting *Shelton v. Canadian N. Ry.*, 189 F. 153, 160 (8th Cir.1911)). This pretty much sums up the situation here: Someone was careless and nothing more. Confronted with a tragic permanent injury to an innocent youngster, the court fits a square peg into a round hole, labeling careless conduct as "willful or malicious." In so doing, the majority contributes to the erosion of language and concepts important to the law, undermining the legislature's effort to limit landowners' liability and providing fuel for the tort litigation explosion.

I respectfully dissent.